UNITED STATES DISTRICT COURT
THE DISTRICT OF MASSACHUSETTS

JAMES M. SULTAN,

                    Plaintiff,

            v.                                                CIVIL ACTION No. 04 CV 11107 MLW

VERIZON COMMUNICATIONS INC.,

                    Defendant.

DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT

        Defendant Verizon Communications, Inc. ("Verizon") submits this memorandum of law

in support of its motion for summary judgment on the Amended Complaint of Plaintiff James M.

Sultan ("Sultan").  As set forth below, Sultan's single claim of age discrimination, pursuant to

Massachusetts General Laws ch. 151B, is untimely and otherwise is preempted by the National

Labor Relations Act ("the Act").

CONCISE STATEMENT OF UNDISPUTED MATERIAL FACTS[1]

        Sultan was employed by Verizon Services Group ("VSG"), a wholly owned subsidiary of

Verizon.  Affidavit of Harvey Jackson ("Jackson Aff."), ¶¶ 1 & 2.  He was employed as a

Systems Engineer in the desktop engineering unit, and was located in Boston, MA.  Deposition

of James Sultan (hereinafter "Sultan Dep."), Vol. I, pp. 36-37, attached as Tab A to the Affidavit

of Robert A. Fisher ("Fisher Aff.").  Initially, Sultan reported to Joseph Conte ("Conte"), who

also was located in Boston.  Id., pp. 37, 45, 53-54.  In the fall of 1999, Conte began reporting to

manager Harvey Jackson ("Jackson").  Id., pp. 37, 45.  Jackson in turn reported to Bruce Merkis

("Merkis"), whose office was located in Pearl River, New York.  Id., p. 37.

---

[1]  For purposes of this motion only, Verizon adopts Sultan's version of events.

In late 1999, Jackson told Sultan that he would now report to Bill Driscoll ("Driscoll"), a contractor. Sultan Dep., Vol. I, pp. 50, 53-54. Sultan was insulted that he was made to report to a contractor and disliked working for Driscoll. Id., pp. 54-56. According to Sultan, Driscoll assigned him "shoddy" work to perform, kept the good work assignments for himself and other contractors, and gave negative feedback to Jackson about Sultan's work performance, with which Sultan disagreed. Id., pp. 56-57.

For example, in July 2000, Driscoll requested that Sultan perform a task by 1:00 p.m. Sultan Dep., Ex. 1.[2] Sultan responded via e-mail, "This won't be done by me by 1:00PM today. Reason being is I don't know how to perform the function that [Driscoll] is requesting." Id. Driscoll forwarded this response to Jackson without comment. Id.; see also Sultan Dep., Vol. I, pp. 59-60. As a result, Jackson was displeased by Sultan's response, noting that Sultan's statement "that you don't know how to perform the functions does not meet the requirements of the position." Sultan Dep., Ex. 1. Sultan disagreed with that assessment and requested a meeting with Merkis, Driscoll and Jackson to discuss the situation. Id.

Per Sultan's request, on July 31, 2000, Merkis, Jackson, Driscoll and Sultan met in Pearl River, New York.[3] Sultan Dep., Vol. I, p. 76. Sultan explained his dissatisfaction with working for Driscoll and requested a transfer to another team leader. Id., pp. 79-80 & 96. Sultan also complained that he had not been promoted and suggested that there may be a glass ceiling. Id., p. 81. According to Sultan, Merkis responded that there was no glass ceiling, but that maybe Sultan could not keep up with the younger workers. Id., p. 82. Sultan explained that keeping up was not his problem and showed Merkis various training certifications that he had received. Id.,

---

[2]  All exhibits to the Deposition of James Sultan are attached at Tab C to the Fisher Aff.

[3]  This was the first time that Sultan had met Merkis in person. Sultan Dep., Vol. I, pp. 78-79.

pp. 82-83.  Merkis then said that they had received reports that Sultan was having trouble with "image builds" for desktop computers.[4]  Id., p. 83.  Sultan denied that this was true.  Id.  Merkis asked him how old he was and that, after Sultan responded that he was 51 years old, Merkis then said that, "I'm the one who wants you out of the organization.  It's not Harvey [Jackson] and its not Bill [Driscoll]."[5]  Id., pp. 83-84.  From these statements, Sultan believed that Merkis sought to eliminate him because of his age.  Id., p. 85.

In August 2000, Sultan received from Jackson his mid-year performance appraisal.  Sultan Dep., Vol. I, pp. 99 & 103.  Sultan was unhappy with the substance of the review and the fact that he thought it was late in coming.  Id., pp. 99-100.

Despite Merkis's alleged comments and the poor evaluation, Jackson notified Sultan that they were granting his request for a transfer and that he was going to report again to Conte.  Id., pp. 95-96.  Sultan was happy working with Conte for the remainder of 2000.  Id., p. 114.  As Sultan explained at his deposition, "[s]o once they left me under Joe [Conte], I thought all was forgiven and it was a new day."  Id., p. 113.

On March 22, 2001, Conte gave Sultan his year-end 2000 performance appraisal.  Sultan Dep., Vol. I, p. 160.  The overall assessment was "Improvement Needed," and the appraisal notified Sultan that he was going to be "put on a Performance Improvement Plan to give him the opportunity to improve his job rating to at least an M (meets expectation) level."  Sultan Dep., Ex. 9.  Sultan wrote in the Employee Comments section, "This appraisal is nothing more than a smoke-screen to a larger and continuing effort which is to force certain Verizon Communications

---

[4]   An image is a bundle of software that is loaded on multiple users' desktop computers across a network.  See Sultan Dep., Vol. I, pp. 130-32.

[5]   Sultan's deposition testimony is inconsistent with other statements by Sultan regarding what Merkis allegedly said at the meeting.  Compare Sultan Dep., Ex. 32.  Merkis denies that he made these supposed comments.  However, Verizon assumes Sultan's deposition testimony is true for purposes of this motion, as it is the most favorable to Sultan.

employees to abandon their jobs to make way for younger and homogenous employees (people of the same creed and color as the current management team)." Id. Sultan signed and dated the appraisal on March 22, 2001. Id. During a meeting on March 22 or 23, 2001, Conte informed Sultan that the performance improvement plan ("PIP") process could lead to his dismissal. Sultan Dep., Vol. I, pp. 134-35, 141 & 160.

On April 23, 2001, Conte notified Sultan that they were going to have a meeting to discuss the PIP on April 26, 2001. Sultan Dep., Vol. II, pp. 11, 13 & 15-16, attached at Tab B to the Fisher Aff. The following day, Sultan requested that Bela Hasek ("Hasek"), a co-worker, also attend the meeting. Sultan Dep., Vol. I, p. 173; see also Ex. 14. Although Sultan was not represented by a labor union, he believed in good faith that he was entitled to have a *Weingarten* representative[6] attend the meeting on his behalf and wanted Hasek to attend the meeting in that capacity. Sultan Dep., Vol. I, pp. 180-81 & 189-90.

After consulting with human resources, Jackson instructed Conte to inform Sultan that having Hasek attend would not be appropriate. Sultan Dep., Ex. 14. Accordingly, on April 25, 2001, Conte told Sultan that it would not be appropriate for Hasek to attend the meeting. Sultan Dep., Vol. I, pp. 181-82; Vol. II, pp. 23-24.

On April 26, 2001, Sultan, Conte and Jackson met in a conference room for the PIP meeting. Id., Vol. I, pp. 187-88. Merkis did not attend the meeting; nor did he participate by telephone. Id., Vol. II, pp. 24-25. Hasek also arrived at the conference room. Id., Vol. I, pp. 190-91. Despite that Conte had already told him that Hasek could not attend, Sultan again asked whether Hasek could sit in on the meeting, and Jackson responded, "No." Id., p. 191. Hasek

---

[6]  This referred to the Supreme Court's decision in NLRB v. J. Weingarten, Inc., 420 U.S. 251 (1975), in which it recognized that an employee has a right under Section 7 of the Act (29 U.S.C. § 157) to the presence of a union representative at an interview which he reasonably believes will result in his discipline. In Epilepsy Foundation of Northeast Ohio, 331 NLRB 676 (2000), the Board had extended that right to non-unionized employees.

then left.  Id.  Sultan told Jackson that "I had a right to have a co-worker present and that I declined to participate in the process without a co-worker of my choosing present."  Id., pp. 195-196.  In taking this position, Sultan was relying on his right to have a *Weingarten* representative, which he understood to apply to him.  Id., Vol. II, pp. 26-27.  Jackson said that he would not honor that request.  Id., p. 25.  Sultan then said that they were at a "Mexican standoff," and the meeting was canceled.  Id., Vol. I, pp. 193-94.

Sultan wrote an e-mail with the heading "Co-Worker Denied" to Kevin Powers, his attorney, describing what had happened at the meeting.  Fisher Aff., Tab D.  Sultan concluded the e-mail by writing, "My desire is to file a complaint with the Nation[al] Labor [Relations] Board, but I want to get your feedback before I do."  Id.

On May 1, 2001, Conte and Jackson asked to talk to Sultan in a conference room.  Sultan Dep., Vol. II, p. 43.  Like the April 26, 2001 meeting, Merkis neither attended the meeting nor participated by telephone.  Id.,Vol. II, p. 46.   At the outset of the meeting, Jackson handed a letter to Sultan.  Id., pp. 43-46, Ex. 17.  The letter stated as follows:

> James,
>
> After our discussion on Thursday about the PIP session, I wanted to make sure that there was no misunderstanding of the purpose of the Performance Improvement Plan (PIP).  The PIP is Verizon's process for providing a framework for employee improvement where it is deemed necessary based upon the appraisal process.
>
> The discussions about your performance are something that Verizon considers to be between you and your management team, and therefore it would not be appropriate for you to have other individuals to be present at such discussion as "representation".  Your manager team is there at those meetings to provide you the coaching and direction which will allow you to have the opportunity to bring your performance to a satisfactory level.  We cannot permit other individuals, outside of the designated management team, to participate or be present at performance discussions.
>
> Participation in the Verizon PIP process is a condition of your continued

> employment.  Your participation is critical to give you the opportunity to bring
> your performance to a fully satisfactory level.  If you choose not to participate in
> the Verizon PIP process, your employment will be separated.

Id., Ex. 17.  Jackson gave Sultan time to read the letter, and Sultan said that he understood it.

Id., Vol. II, pp. 67-68.

Jackson then told Sultan that they wanted to have the PIP meeting the following day,

May 2, 2001.  Id., Vol. II, p. 47.  Sultan responded that he would be there, but that he still had

the right to have a co-worker present.  Id., Vol. II, pp. 47, 57-58 & 71-72.  According to Sultan,

Jackson then said that Sultan did not have the right to have a co-worker present and, that unless

he agreed, he would be terminated.  Id., Vol. II, p. 49; Ex. 3.  Sultan then reiterated his request to

have a co-worker present.  Id., Vol. II, p. 50.  Sultan told Jackson, "I still have the right to ask,

Harvey.  I'll be there, Harvey.  But I have the right to ask."  Id.  Sultan told Jackson that "[t]his is

the law" and continued to believe in good faith that he had the right to the presence of a co-

worker.  Id. Vol. II, pp. 59-60.  Jackson continued to disagree that Sultan had any such right.  Id.,

Vol. II, p. 59.  Sultan and Jackson went back and forth about this issue until Jackson told Sultan

that he was terminated for insubordination.  Id., Vol. II, pp. 59-60; Ex. 3.  At the time of this

meeting, Jackson was 50 years old, less than two years younger than Sultan himself.  Jackson

Aff., ¶ 3.

After his termination, Sultan was never replaced.  Id., ¶ 4.  At the time, the business unit

was in the process of reducing headcount.  Id.  Thus, when Sultan was terminated, there was no

need to replace him.  Id.; see also Sultan Dep., Vol. II, pp. 115-16 (testifying that he had no idea

who did his work after he was terminated).

Sultan informed Powers of his termination.  Fisher Aff, Tab E.  In a series of e-mails,

Powers told Sultan that he "need[ed] to file a complaint with the NLRB" and "[t]he important

thing is to make it clear that you asserted your Wiengarten [sic] -Epilepsey [sic] (sp.) rights." Id.

Powers then instructed Sultan that "you need to make it clear and uncomplicated what the issue

was that caused them to terminate you[,] ie the assertion of your protected rights." Id.

Consistent with Powers' instruction, on May 2, 2001, one day after his termination,

Sultan filed an unfair labor practice charge with the National Labor Relations Board ("Board").

Sultan Dep., Ex. 21. In that charge, Sultan wrote:

> A previous scheduled meeting set for 4/26/01 and a request from me to have one of my co-worker [sic] present had been asked. On April 26, 2001 my boss, Joe Conte stoped [sic] in our lab and told me that I could not a have a co-worker present. He went on to say that the PIP process could lead to my dismisal [sic]. To me that statement implied that the PIP process was investatory [sic]. Joe Conte, also mentioned this PIP process in the past to me, and always with the threat of dismissal. On 4/26 we met along with my co-worker whom they asked to leave. On 5/1 I was called to a room terminated as of 5/1/2001. Verizon Communications violated the NLRA by depriving me of my protective [sic] right to representation under Epilepsey [sic] Foundation.

Id. Sultan believed that Verizon had violated the Act by denying his request for a representative

and then terminating him. Sultan Dep., Vol. II, p. 86.

On August 22, 2001, the Regional Director of Region 1 of the Board notified Sultan that

she was not going to issue a complaint on his allegations because she had determined, after

investigation, that the PIP meeting was not investigatory in nature, citing Baton Rouge Water

Works Co., 246 NLRB 995, 997 (1979), and that Sultan had not been entitled to a *Weingarten*

representative.[7] Sultan Dep., Ex. 23.

On October 31, 2001, Sultan filed a charge of discrimination against Verizon with the

Massachusetts Commission Against Discrimination ("MCAD"). Sultan Dep., Ex. 26. In his

---

[7]  Sultan disagreed with that determination, as he continued to believe that Verizon had violated his rights under the National Labor Relations Act. Id., Vol. II, p. 90. Sultan filed an appeal of the Regional Director's determination, explaining that his "only other choice is to seek restitution in civil court." Sultan Dep., Ex. 24. His appeal was denied, and Sultan sought to pursue the allegations of his NLRB charge in this litigation. Id., Vol. II, p. 94.

charge, Sultan alleged that "[o]n or about May 1, 2001, I was involuntarily terminated from my position as Systems Engineer." Id. Sultan further alleged that "[t]he reason stated to me was insubordination because I requested a co-worker to attend a meeting to discuss my alleged performance issues and a performance improvement plan." Id. Sultan alleged that he believed that he had been a victim of age discrimination, among other grounds. Id. At his deposition, Sultan explained his charge of discrimination as follows: "[w]hat I was trying to convey here is that there was a consortium of things. It was because of Weingarten. . . . It was because of my age." Sultan Dep., Vol. II, p. 104.

During the MCAD's investigation, Sultan sought to amend his charge to reflect the following:

> Under the Epilepsy Foundation and Supreme Court's ruling in NLRB v. Weingarten, 420 U.S. 251 (1975), recognized that non-union employees, also, have the right to have a coworker present at an investigatory interview. And since Verizon was investigati[ng] my performance for termination, I to[o] was denied that right and wrongfully terminated.

Sultan Dep., Vol. II, p. 99; Ex. 29. Sultan believed that this aided his claim of wrongful termination and wanted the MCAD to consider it. Id., Vol. II, p. 100. The MCAD denied the amendment.[8] Id.

On April 30, 2004, Sultan brought suit against Verizon, Merkis and Jackson, alleging age discrimination and a violation of Section 8(a)(1) of the Act. On May 26, 2004, Defendants removed the case to federal court. On or about December 23, 2005, the Court granted in part Sultan's motion to amend the complaint to assert only a claim of age discrimination, pursuant to M.G.L. ch. 151B. See Fisher Aff., Tab G. At oral argument, Sultan agreed to voluntarily

---

[8]  On April 16, 2004, the MCAD notified Sultan that it was dismissing his complaint of discrimination. Sultan Dep., Ex. 28. Sultan appealed the MCAD's determination, arguing among other things, that the MCAD should have considered his amendment regarding his *Weingarten* rights. Sultan Dep., Ex. 29.

dismiss Merkis and Jackson as defendants from the case, and the Court noted that any claim of

age discrimination based upon events that predated Sultan's May 1, 2001 termination were

barred by the applicable three-year statute of limitations.  See id.; Fisher Aff., Tab H, p. 13.

Thereafter, the parties engaged in discovery.  Verizon asked via interrogatory for Sultan

to "state the basis of your claim that Verizon . . . discriminated against you on the basis of your

age."  Sultan Dep., Ex. 32, Req. No. 8.  In response, to that interrogatory, Sultan responded as

follows:

> In July 31, 2000, I traveled to Verizon's office in New York to meet, at my
> request, with Mr. Merkis, the supervisor of my immediate supervisor, Mr. Harvey
> Jackson.  I had asked for this meeting because I was disturbed by the fact that I
> was only the only Verizon employee in Mr. Jackson's group who was required to
> report to an outside contractor.  Also, I was disturbed by the fact that my Systems
> Engineering duties were gradually being taken from me and given to outside
> contractors, including outside contractor Bill Driscoll.  At one point in this
> meeting while explaining to Mr. Merkis how I had help build the very
> organization that he was now reaping the benefit of, he (Mr. Merkis) asked me my
> age, then said something to the effect of "never mind, forget I asked that
> question."  I told Mr. Merkis that I was 51.  Mr. Merkis then suggested that I was
> perhaps having a hard time keeping up with up with my work because I wasn't
> current with the technology as were the younger employees.  This was not true,
> and I proved it by showing Mr. Merkis the certificate programs and training that
> was up-to-date and had been completed by me.  Also, my boss, Harvey Jackson,
> gave me a negative Mid-Year Performance Appraisal review three days
> (8/3/2000) after meeting with Mr. Merkis.  Mr. Jackson was two months late
> giving me the Mid-Year Performance Appraisal review, because it, in fact, was
> supposed to be delivered to me in June 2000.  This indicated to me manipulation
> on the parts of Mr. Jackson and Mr. Merkis.  Mr. Jackson later revised the
> appraisal again (even more negative this time) with a sign off-date of 8/31/2000
> (the Mid-Year Performance Appraisal review was now three months late).

Id., Answer to Interrogatory No. 8.  As set forth in the above answer, Sultan did not identify his

termination as underlying his claim of age discrimination.[9]  See generally id.  At his deposition,

Sultan was given an opportunity to review his Interrogatory answers, and he testified that they

---

[9]   Pursuant to Local Rule 26.5(C)(8), an interrogatory requesting that a party "state the basis" of an alleged legal
contention requires him to "state separately the acts or omissions to act on the part of any person . . . which form
any part of the party's information regarding the alleged facts or legal conclusions referred to in the interrogatory."

were complete and accurate.  Sultan Dep., Vol. II, p. 138.

Further at his deposition, Sultan was asked again the basis of his claim of age discrimination and again he failed to identify his termination:

Q:    Your claim of age discrimination rests upon what Mr. Merkis ha[d] told you in the July 31, 2000, meeting; is that fair to say?

A:    That and other things.

Q:    And the performance appraisals?

A:    The performance appraisals, yes.

Q:    And the placement on the PIP; is that fair to say?

A:    When you say "placement on the PIP," there was no PIP.

Q:    But you were told during your year-end 2000 performance appraisal that you would be put on a Performance Improvement Plan.

A:    I was told not that I would be put on it.  They was talking about it.  It was just talk.

Q:    Do you believe that . . . that was age discrimination too?

A:    I believe the PIP was a disciplinary process that they was using.  It was a weapon.  It's just another weapon to get rid of you.

Q:    Is there anything else that you point to to support your age claim?

A:    Yes.  Bruce Merkis's secretary sent a document back asking people to send in their birthdays, and they did that right around the time they was thinking about getting rid of people.

Q:    Do you recall when that was?

A:    I don't recall, but it had to be -- I don't recall the date, but it had to be in the fall of 2000, I would say.

Q.    Anything else?

A.    Nothing that pops to mind right now, but it may come later.

Sultan Dep., Vol. II, pp. 113-14.

ARGUMENT

I.    Sultan's M.G.L. Ch. 151B Claim Is Untimely.

As the Court already recognized at the hearing on Sultan's motion to amend the Complaint, any claim of age discrimination based upon events that predate May 1, 2001 is barred by the applicable three-year statute of limitations, because Sultan did not bring suit until April 30, 2004. See M.G.L. ch. 151B, § 9. As Sultan's interrogatory answer and deposition testimony make clear, Sultan points to five incidents as underlying his claim of age discrimination: (1) Merkis's alleged statements at the July 31, 2000 meeting; (2) the 2000 mid-year performance appraisal, which he received in August 2000; (3) his 2000 year-end performance appraisal, which he received on March 22, 2001; (4) being informed on March 22, 2001 that he would be placed on the PIP and (5) Merkis's secretary's request for his birthday in the fall of 2000. Sultan's testimony regarding the July 31, 2000 meeting and his comments on the 2000 performance appraisal demonstrate that he believed that he had been the victim of age discrimination long before May 1, 2001 (the last date within the limitations period). Thus, any claim based upon these incidents is time-barred. See Fontanez-Nunez v. Janssen Ortho LLC, No. 05-1854, 2006 WL 1216721, at *3 (1st Cir. May 8, 2006) (holding that discrete acts of discrimination outside of the limitations period are untimely).

That leaves only Sultan's termination. But, as evidenced by his interrogatory answer and his deposition testimony, Sultan does not rely upon that incident as underlying his claim of age discrimination. When given the opportunity to explain his claim under oath, he never identified any incident within the limitations period, let alone his termination.

II.    Any Claim of Discrimination Based on Sultan's Termination Is Preempted by the National Labor Relations Act.

Indeed, there is a good reason why Sultan never identified his termination as the basis of his claim of age discrimination: Sultan believed that his termination was in violation of the National Labor Relations Act.  He filed a charge of unfair labor practices with the Board to that effect and attempted to assert a cause of action in the original complaint, alleging that he was wrongfully terminated for asserting his right to a *Weingarten* representative in violation of the Act.  See Complaint.

While Verizon submits that Sultan is foreclosed from asserting that his termination also was a violation of Chapter 151B, regardless, any such claim would be preempted by the Act. Section 7 of the Act establishes that employees have certain protected rights, and Section 8(a) declares certain conduct by employers to be unfair labor practices.  See 29 U.S.C. §§ 157 & 158(a).  As the Board has exclusive jurisdiction under the Act to hear claims of unfair labor practices, see 29 U.S.C. § 160, the Supreme Court has held that "[w]hen an activity is arguably subject to § 7 or § 8 of the National Labor Relations Act…the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board."  San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 245 (1959); see also Tamburello v. Comm-Tract Corp., 67 F.3d 973, 976 (1st Cir. 1995) (explaining that the Board has primary and exclusive jurisdiction over claims of unfair labor practices).

Sultan's assertion of a right to a *Weingarten* representative is subject to Sections 7 and 8 of the Act.  In NLRB v. J. Weingarten, Inc., 420 U.S. 251 (1975), the Supreme Court affirmed the Board's conclusion that an employee has a right under Section 7 of the Act to the presence of a union representative during an investigatory interview which he reasonably believes will result in his discipline.  The Court also upheld the Board's determination that an employer who denies an employee's request for a union representative yet proceeds with the interview commits an

unfair labor practice and violates Section 8(a)(1) of the Act (29 U.S.C. § 158(a)(1)). At the time

of Sultan's termination, the Board had recognized that an employee not represented by a union

was entitled under the Act to have a co-worker serve as a *Weingarten* representative. <u>See</u>

<u>Epilepsy Foundation of Northeast Ohio</u>, 331 NLRB 676, 676 (2000). Finally, the Board has long

held that the discipline or discharge of an employee for asserting his *Weingarten* right also

violated Section 8(a)(1) of the Act. <u>See</u> <u>Southwestern Bell Tel. Co.</u>, 227 NLRB 1223 (1977).

Thus, a claim that an employee was terminated for exercising his right to a *Weingarten*

representative is a matter within the exclusive jurisdiction of the Board. <u>See, e.g.</u>, <u>Steward v.</u>

<u>The Colonial Williamsburg Foundation</u>, No. Civ. A 4:01CV79, 2002 WL 32588911, *6 (E.D.

Va. March 20, 2002) (court lacked jurisdiction related to claim that employer denied request for

*Weingarten* representative).

　　　The record establishes that Sultan asserted to Jackson and Conte that he had a right to a

*Weingarten* representative and that he believed that he was wrongfully terminated for exercising

that right. According to Sultan, he believed in good faith, both on April 26, 2001 and again on

May 1, 2001, that he was entitled to a *Weingarten* representative at the PIP meeting. Although

both Conte and Jackson informed Sultan multiple times that they would not honor his request,

Sultan continued to insist that he had the right to have a co-worker present, and after significant

back and forth between Sultan and Jackson regarding this issue on May 1, 2001, Jackson

terminated Sultan's employment for insubordination.

　　　Consistent with the fact that his claim is grounded in rights under the Act, one day after

his termination, Sultan filed a charge of unfair labor practices with the Board, claiming that

Verizon committed an unfair labor practice by refusing his request for a *Weingarten*

representative and then terminating his employment after he insisted on such a representative. In

filing the charge, Sultan's attorney instructed him to make "clear and uncomplicated" that

Verizon terminated him for "the assertion of your protected rights" under *Weingarten* and

*Epilepsy Foundation*.

Having asserted that he had been terminated for exercising his rights under the Act,

Sultan cannot now recast that claim as one under state law for age discrimination, as it fails on

preemption grounds. In Chaulk Services, Inc. v. MCAD, 70 F.3d 1361, 1366-67 (1st Cir. 1995),

the First Circuit held that an employee's claim of discrimination is preempted by the Act if it is

founded on the identical facts which provide the basis for an unfair labor practice charge.[10]

Assuming *arguendo* that Sultan actually asserts a claim of age discrimination based upon his

termination, the facts at issue would be the same exact facts that served as the basis for his claim

under the Act -- that he was terminated for asserting his right to a *Weingarten* representative.

Both in his charge of unfair labor practices to the Board and in his charge of discrimination to the

MCAD, Sultan alleged that he was unlawfully terminated after he requested the presence of a co-

worker at the PIP meeting. Sultan made clear at his deposition that his underlying charge of

discrimination is inextricably linked to his claim under the Act, characterizing the charge as

reflecting what he called "a consortium" of things, including his claim relating to *Weingarten*.

Indeed, Sultan specifically raised the alleged violation of his rights under the Act to the MCAD,

because he thought it relevant to his claim of discrimination. Thus, as in Chaulk, Sultan couches

---

[10]    See also Local Union No. 12004, United Steelworkers of America v. MCAD, 377 F.3d 64, 78-79 (1st Cir. 2004) (explaining that much of the conduct underlying claim of discrimination based on sexual orientation, pending before MCAD, was protected or arguably prohibited by the Act and thus preempted); Morgan v. Mass. General Hosp., 901 F.2d 186, 193-94 (1st Cir. 1990) (claim of retaliation under the Civil Rights Act was preempted by federal labor law); Class v. Ranger American Armored Svcs., Inc., 245 F.Supp. 2d 370, 374 (D. P.R. 2003) (dismissing complaint on preemption grounds where "Plaintiff's claims of age discrimination . . . are founded upon the identical facts which provide the basis for the unfair labor practice charge"); Lemerich v. International Union of Operating Engineers, 171 L.R.R.M. (BNA) 2560 (D. Me. 2002) (plaintiff's state law claim of sex discrimination "raises the identical controversy that would be presented by unfair labor dispute before the NLRB" and therefore is not saved from preemption).

his termination as a labor dispute within the jurisdiction of the Board, and any claim that his termination also constituted age discrimination would be preempted by the Act.  See Chaulk, 70 F.3d at 1370 (allowing such a discrimination claim to go forward would compromise the Board's role as chief arbiter of labor disputes because "there are few unfair labor practices which could not be similarly repackaged" as one motivated by discriminatory animus); see also Schult v. IBM Corp., 123 Fed. Appx. 540, 542-43, 2004 U.S. App. LEXIS 26028 (4th Cir. Dec. 15, 2004) (state law claim of wrongful termination based on denial of Weingarten representative was preempted by the Act).

Further, just as the two claims rest on identical facts, a claim of age discrimination based on Sultan's termination could not be adjudicated without addressing the federal labor law issues, as the claim turns on whether or not Sultan was correct that the PIP meeting triggered his rights under the Act.  While Sultan believed he had the right to a Weingarten representative, the Region, citing to the Board's decision in Baton Rouge Water Works, Co., 246 NLRB 995 (1979), concluded that the PIP meeting was not investigatory in nature.  As a result, the Region determined that Verizon had no obligation to abide by Sultan's request for a Weingarten representative, and Sultan was not privileged to insist that he had such a right in the face of Jackson's refusal to honor it.  Allowing Sultan to repackage those same issues under the guise of age discrimination serves only to intrude upon the authority of the Board.[11]  See Chaulk, 70 F.3d

---

[11]  This is precisely why federal labor law preempts, not just what the Board has determined to be protected or prohibited, but also what is *arguably* protected or prohibited.  See Garmon, 359 U.S. at 245; Local Union No. 12004, 377 F.3d at 79 n. 13 (explaining that homophobic slurs made at a picket line are arguably protected by the Act).  As the Board is authorized to interpret the Act, it was free to conclude that the circumstances of this case did not give rise to a *Weingarten* violation.  By the same token, the Board also was free to change its position regarding the circumstances under which an employee has the right to a *Weingarten* representative.  See Epilepsy Foundation of Northeast Ohio, 268 F.3d 1095, 1100 & 1102 (D.C. Cir. 2001) (concluding that Board was free to depart from its precedent where its decision was a reasonable interpretation of the Act).  In fact, the Board has taken the position in the past that all disciplinary meetings, not just those that are investigatory, trigger the *Weingarten* right.  See Certified Grocers of California, 277 NLRB 1211, 1213-14 (1977), rev'd Baton Rouge Water Works, Co., 246 NLRB 995 (1979).  Likewise, the fact that the Board in IBM Corp., 341 NLRB No. 148 (June 9, 2004) reversed its

at 1367 (allowing MCAD to proceed on sex discrimination claim creates "potential risk that it will incorrectly apply the substantive rules governing labor controversies" and "the potential for incompatible or conflicting adjudications"); see also American Steel Erectors v. Local Union No. 7, 178 L.R.R.M. (BNA) 3190 (D. Mass. 2006).

III.    Any Age Discrimination Claim Based Upon Sultan's Termination Fails As a Matter of Law.

On the merits, any claim of age discrimination based on Sultan's termination fails as a matter of law.  Sultan cannot make out a prima facie case of discrimination, and Jackson had a legitimate, nondiscriminatory reason for Sultan's termination.

A.    Sultan Cannot Establish A Prima Facie Case of Discrimination.

To succeed on a claim of age discrimination, Sultan must show that (1) he is a member of a protected class; (2) he performed his job at an acceptable level; (3) he was terminated and (4) his employer replaced him with someone who is substantially younger and has similar qualifications.  See, e.g., Sullivan v. Liberty Mutual Ins. Co., 825 N.E.2d 522, 531, 444 Mass. 34, 41 (2005); Knight v. Avon Products, 780 N.E.2d 1255, 1258, 438 Mass. 413, 414 (2003); Preble v. Transportation Displays, Inc., C.A. No. 04-11005-RWZ, 2005 U.S. Dist. LEXIS 18201, *3 (D. Mass. 2005).  Even assuming that Sultan could establish the first three prongs of the prima facie case,[12] there is no evidence that Sultan was ever replaced with anyone, let alone someone who is substantially younger and has similar qualifications.  See id., at *3-*4 (granting summary judgment on state age discrimination claim where no evidence of meeting fourth prong).

---

decision in Epilepsy Foundation and held that the Weingarten right is limited to union-represented employees does not change the preemption analysis.

[12]    The parties dispute whether he was adequately performing his job.

B.    Sultan Was Terminated For A Legitimate, Non-Discriminatory Reason.

Regardless, the very fact that the Board concluded that Sultan was incorrect in his belief that he was entitled to a *Weingarten* representative makes clear that Jackson terminated his employment for insubordination, a legitimate, non-discriminatory reason.  While Sultan insisted that he had a right to a *Weingarten* representative, Conte and Jackson told him on at least three separate occasions -- on April 25, 2001, on April 26, 2001, and again on May 1, 2006 -- that they would not honor that request.  Jackson also made clear to Sultan that he disagreed with his belief that he had the right to a representative.  Rather than abide by their position, Sultan pushed the envelope by refusing to participate in the April 26, 2001 meeting without Hasek's presence.  Then on May 1, 2001, Sultan was presented with a letter warning him that his continued refusal to participate without a representative would result in his termination.  Rather than back down, Sultan continued to insist that he had the legal right to have a *Weingarten* representative.  Sultan, reiterated this position, even after Jackson told him that he had no right to a representative and, unless he agreed, he would be terminated.  When Sultan refused to agree, Jackson terminated him for insubordination.

While Sultan may have believed in good faith that he was acting within his rights, he was wrong.  As the meeting was not "investigatory" and thus did not trigger any *Weingarten* right, Sultan was not privileged to insist that he had such a right.  By ignoring Jackson's direction in this regard, Sultan committed insubordination.  See Williams v. Raytheon Co., 220 F.3d 16, 19 (1st Cir. 2000) (plaintiff failed to show that employer's reason for termination -- insubordination -- was false); Cosme v. Salvation Army, 284 F. Supp. 2d 229, 238 (D. Mass. 2003) (employer established legitimate reason for discharge where employee engaged in insubordination by disregarding management's directive that she speak English, despite her belief that employer's

English-only policy was unlawful).

There is no evidence to suggest that Jackson's decision was based on anything but Sultan's disregard of his instructions regarding a *Weigarten* representative, let alone evidence of age discrimination. Jackson himself was 50 years of age, less than two years younger than Sultan. See Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1471 (11th Cir. 1991) (affirming summary judgment for employer because decision-makers were well over 40 years of age and thus unlikely to be perpetrators of age discrimination). Further, Sultan testified at his deposition that he is not aware of any other instance of an employee requesting a *Weingarten* representative, let alone whether an employee was granted such a request under similar circumstances. Sultan Dep., Vol. II, p. 116.

While Sultan likely points to Merkis's alleged statements at the July 31, 2000 meeting to support his claim of age discrimination, those facts, even if true, are insufficient to establish pretext for unlawful discrimination. The meeting with Merkis occurred more than nine months before Sultan's termination. There is no evidence to suggest that Merkis had any involvement in the decision to terminate Sultan or Jackson's refusal to honor Sultan's request for a *Weingarten* representative. Merkis did not participate in the May 1, 2001 meeting in question; nor did Jackson consult him before terminating Sultan's employment. Thus, even assuming Sultan's testimony regarding Merkis's statements at the July 31, 2000 meeting is true,[13] that evidence is insufficient to defeat summary judgment on Sultan's claim of age discrimination.[14] See

---

[13]  Given the serious discrepancy between Sultan's deposition testimony and his interrogatory answer regarding this meeting, this is a significant question.

[14]  Nor can Sultan claim that his termination was the result of any discriminatorily-motivated conduct that Merkis allegedly set into motion. Compare Cariglia v. Hertz Equip. Rental Corp., 363 F.3d 77 (1st Cir. 2004). There is no evidence that Jackson and Conte intended to terminate Sultan's employment when they attempted to meet with him regarding the PIP process. Instead, Sultan's termination was a product of his own making: He incorrectly pressed the issue of having a *Weingarten* representative at the PIP meeting, despite being repeatedly told that Jackson would not honor that request. Nothing that Merkis allegedly said or did nine months earlier caused Sultan to engage in this

Fontanez-Nunez, No. 05-1854, 2006 WL 1216721 at *4 (although supervisor had directed age-related and vulgar comments towards plaintiff, supervisor was not involved in the decision to terminate and thus plaintiff "has not presented any evidence to demonstrate that either age or gender discrimination was the real reason for the termination"); Medina-Munoz v. R. J. Reynolds Tobacco Co., 896 F.2d 5, 10 (1st Cir. 1990) ("The biases of one who neither makes nor influences the challenged personnel decision are not probative in an employment discrimination case").

IV.    Verizon Was Not Sultan's Employer and Cannot be Liable

Finally, Verizon is entitled to summary judgment because it was not Sultan's employer. Sultan was employed by non-party VSG, a separate corporate entity, and Sultan has presented no evidence to suggest that Verizon should be liable for any alleged acts of VSG.  See Commodore v. Genesis Health Ventures, Inc., 824 N.E. 2d 453, 456-57, 63 Mass. App. Ct. 57 (Mass. App. Ct. 2005) (requiring showing that entities are "joint employers" where plaintiff asserts Ch. 151B claim against entity which is not her nominal employer); Tennaro v. Ryder System, Inc., 832 F. Supp. 494, 497-98 (D. Mass. 1993) (dismissing Ch. 151B claim against corporate parent where plaintiff presented no evidence that parent was liable for any alleged injuries caused by corporate subsidiary).

---

fashion.

CONCLUSION

For these reasons, Verizon respectfully requests that the Court grant it summary judgment on Sultan's Amended Complaint and grant such other and further relief as it deems just and appropriate.

VERIZON COMMUNICATIONS, INC.

By its attorneys,

 s/ Robert A. Fisher
Arthur G. Telegen, BBO #494140
Robert A. Fisher, BBO #643797
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA  02210
(617) 832-1000

Dated:  May 31, 2006

CERTIFICATE OF SERVICE

I, Robert A. Fisher, certify that on May 31, 2006, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to plaintiff by electronically serving his counsel of record.

s/ Robert A. Fisher