UNITED STATES DISTRICT COURT
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES M. SULTAN,<br><br>        Plaintiff,<br><br>v.<br><br>VERIZON COMMUNICATIONS INC.,<br><br>        Defendant. | CIVIL ACTION No. 04 CV 11107 MLW |

DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT

Defendant Verizon Communications, Inc. ("Verizon") submits this brief reply memorandum in order to respond to Plaintiff James Sultan's ("Sultan") distortion of the record, including his own deposition testimony, in his Opposition to Verizon's Motion for Summary Judgment.

1.  Sultan's Claim of Discrimination Is Preempted by the National Labor Relations Act.

In arguing that his claim of discrimination is not preempted by the National Labor Relations Act ("Act"), Sultan asserts that his charge of unfair labor practices to the National Labor Relations Board ("Board") did not encompass his termination. This is belied by the undisputed record, including his own deposition testimony. Sultan expressly alleged in the charge that "[o]n 5/1 I was called to a room terminated as of 5/1/2001. Verizon Communications violated the NLRA by depriving me of my protective [sic] right to representation under Epilepsey [sic] Foundation." See Exhibit 21 to the Deposition of James M. Sultan, attached as Tab C to the Affidavit of Robert A. Fisher In Support of Defendant's Motion for Summary Judgment ("Fisher Aff.") (on file with the Court). Indeed, his lawyer instructed him, in filing the charge with the Board, "you need to make it clear and uncomplicated what the issue was that

B3229018.1

caused them to terminate you[,] ie the assertion of your protected rights." Fisher Aff., Tab E.

Not only is Sultan's argument contrary to the express language of the charge, it also is refuted by his own sworn deposition testimony. He acknowledged at his deposition that the charge of unfair labor practices encompassed his termination:

> Q. Do I take from this charge that you were challenging both the company's denial of your request to have a co-worker present as well as your termination?
>
> A. Well, I don't understand the question.
>
> Q. Fair enough. Let me rephrase. You filed a charge alleging that Verizon had violated the National Labor Relations Act, correct?
>
> A. Yes.
>
> Q. And that was because they denied your request for a representative and terminated you?
>
> A. Yes, they terminated me.

Sultan Dep., Vol. II, p. 86, attached as Tab B to the Fisher Aff. Because this testimony refutes any claim that the charge did not encompass his termination, Sultan claims -- without any explanation -- that this testimony is somehow unclear. See Opposition, p. 11. But, as demonstrated by the foregoing testimony, Sultan knew to ask for clarification when he did not understand a question. In response to the last question, Sultan answered it, thereby demonstrating that he understood it. Likewise, Sultan's counsel never objected to the form of that question and cannot now claim that the question somehow was improper.[1] Further, to the extent that Sultan's affidavit, submitted with his Opposition, is contrary to his sworn deposition testimony in this regard, it should be disregarded.[2] See Colburn v. Parker Hannifin/ Nichols

---

[1] At the outset of the deposition, counsel for both parties had stipulated that objections as to form had to be raised at the deposition. See Sultan Dep., Vol. 1, p. 4, attached as Tab A to the Fisher Aff.

[2] More generally, Sultan's affidavit attempts to put a gloss on his sworn deposition testimony. To the extent that he is attempting to manufacture a dispute of fact with his deposition testimony, the affidavit should be disregarded or

B3229018.1

- 2 -

Portland Div., 429 F3d 325, 332 n.3 (1st Cir. 2005) (plaintiff could not use affidavit to change deposition testimony to defeat summary judgment).

Finally, Sultan relies on the dismissal letter from the Board as evidence that it did not address his termination. See Opposition, p. 8. According to Sultan, the Board only ruled that he "did not have a right to have a co-worker present." Id. That interpretation, even if true, does not support Sultan's conclusion because the ruling disposes of both questions -- whether he had a right to a *Weingarten* representative and whether the company had the right to terminate him for insisting on such a right. Because Sultan never had the right to a representative, he was not engaged in conduct protected by Section 7 of the Act and thus his termination was not prohibited by Section 8 of the Act.

Even if it were ambiguous as to whether the Board addressed his termination, Sultan's argument exposes why his claim must be preempted. Sultan's approach to preemption would require the Court and perhaps a jury to speculate as to what the Board meant when it dismissed his charge of unfair labor practices. This type of second-guessing was precisely what the Supreme Court sought to prevent by holding that the federal courts must defer to the exclusive competence of the Board when an activity is arguably subject to the Act.[3] San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 245 (1959).

2.  Verizon Was Not Sultan's Employer.

In his Opposition, Sultan does not dispute that Verizon was not his actual employer. Nor does he put forth any facts to suggest that Verizon could be bound by any alleged conduct by

---

stricken.

[3] Sultan's further claim that his state law discrimination claim falls within the exception to Garmon for matters "so deeply rooted in local feeling" has been expressly rejected by the First Circuit. See Chaulk Services, Inc. v. MCAD, 70 F.3d 1361, 1366-67 (1st Cir. 1995),

Sultan's actual employer, Verizon Services Group. As such, Verizon is entitled to summary judgment.

Because he cannot challenge these facts, Sultan claims that Verizon is estopped from claiming it is not a proper defendant because it has defended itself in this litigation and before the Board and the Massachusetts Commission Against Discrimination ("MCAD"). Opposition, p. 10. Sultan cites no law for this remarkable proposition and for good reason. In the Complaint, the Amended Complaint, his MCAD charge and his Board charge, Sultan named Verizon as his employer. Had Verizon refused to respond to any of these pleadings on the basis that it was not in fact his employer, as Sultan suggests, Verizon would have been defaulted. See, e.g., Fed. R. Civ. Pro. 55. Thus, its only recourse was to defend against Sultan's allegations.

In doing so, at every step of this litigation, Verizon made clear that it was not Sultan's employer and not the proper defendant. In both its Answer and its Answer to the Amended Complaint, Verizon denied that it was Sultan's employer. See Answer, ¶ 3; Answer to Amended Complaint, ¶ 1 ("Verizon . . . denies that Sultan was an employee of Defendant Verizon Communications, Inc."). It also asserted as an affirmative defense that "Sultan has failed to name an indispensable party." See Answer to Amended Complaint, Fifteenth Defense. In no way can Verizon be estopped from raising this issue on summary judgment.[4]

3.   Sultan Has Not Established a Prima Facie Case.

In his Opposition, Sultan claims that he has established a prima facie case of age discrimination, but nowhere does he cite to any evidence that he was replaced by a younger worker. See Opposition, p. 8. While Sultan claims that he trained younger contractors before his

---

[4] Finally, the fact that a severance offer and Sultan's performance appraisal included the Verizon logo is irrelevant. Cf. People v. Holiday Inns, 62 F.E.P. Cases (BNA) 815 (W.D.N.Y. 1992) (use of company trademarks and name are insufficient to establish liability for employment discrimination where company was not actual employer).

B3229018.1

- 4 -

termination, see Sultan Affidavit, ¶ 23, that assertion, even if true, does not mean that he was replaced by a younger worker. And when pressed at his deposition as to who did his work after he was terminated, Sultan responded, "I do not know." Sultan Dep. Vol. II, pp. 115-16.

Nor can Sultan avail himself of the standard set forth in Sullivan v. Liberty Mutual Ins. Co., 825 N.E.2d 522, 533-34, 444 Mass. 34 (2005). In Sullivan, the Supreme Judicial Court held that in the context of a group layoff, a plaintiff may satisfy the fourth prong of the prima facie case by producing some evidence that the layoff occurred under circumstances giving rise to a reasonable inference of discrimination. That standard does not aid Sultan because he was not terminated as a part of a group layoff.

Regardless, Sultan has failed to present evidence suggesting that his termination occurred under circumstances creating an inference of unlawful age discrimination. The alleged comments by Merkis occurred nine months before his termination. Sultan also points to the Affidavit of Bela Hasek, in which Hasek purports to describe half of a telephone conversation involving Jackson. That alleged conversation says nothing to suggest age discrimination.[5]

---

[5] In any event, Sultan should be barred from relying upon Hasek's affidavit to support any claim of age discrimination. Under Federal Rule 26(a)(1)(A), Sultan was required to disclose "the name . . . of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses . . . identifying the subjects of the information." Sultan failed to comply with this requirement. Although Sultan identified Hasek as a person with knowledge, his statement as to Hasek's knowledge failed to put Verizon on notice that he had knowledge of any alleged telephone call involving Jackson. See Exhibit 1 hereto. Likewise, while Sultan was asked by interrogatory to state the basis of his claim of age discrimination, he failed to identify any such telephone call. See Sultan Dep., Ex. 32, Answer to Req. No. 8, attached as Exhibit C to the Fisher Aff. Sultan's omissions in this regard either mean that Sultan concedes the alleged telephone conversation is irrelevant or that he has failed to comply with his discovery obligations. Either way, the affidavit should be stricken or disregarded.

## CONCLUSION

For these reasons and those set forth in its Memorandum of Law, Verizon respectfully requests that the Court grant it summary judgment on Sultan's Amended Complaint and grant such other and further relief as it deems just and appropriate.

VERIZON COMMUNICATIONS, INC.

By its attorneys,

s/ Robert A. Fisher
Arthur G. Telegen, BBO #494140
Robert A. Fisher, BBO #643797
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000

Dated: July 14, 2006

## CERTIFICATE OF SERVICE

I, Robert A. Fisher, certify that on July 14, 2006, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to plaintiff by electronically serving his counsel of record.

s/ Robert A. Fisher

B3229018.1

- 6 -

**EXHIBIT 1**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES SULTAN, | |
| Plaintiff | |
| v. | CIVIL ACTION<br>NO. 04-11107-MLW |
| VERIZON, et al | |
| Defendants | |

Pursuant to Rule 26(a) of the Federal Rules of Civil Procedure and Local Rules 26.1(B) & 26.2(A), the plaintiff, James Sultan, submits the following initial disclosures based upon information currently available to him.

### A. Rule 26(a)(1)(A) and Local Rule 26.1(B)(1)(a.-d.)

a.) Filed herewith is the plaintiff's affidavit, itemizing his damages.

b.) Here are the names and, if known, the addresses and telephone numbers of the individuals thought to have discoverable information and a summary of what knowledge each is thought to have:

    1.) Elaine Heider - caught stealing aptitude tests for computer programmers and giving same to her sister and friends, she was suspended, but not only were she and her sister not fired, they received several subsequent promotions from Verizon. In contrast, the plaintiff's polite insistence on having a co-woker (the plaintiff's former team leader, Bela Hasek) sit in on the preliminary PIP (Performance Improvement Plan) meeting to give input on the plaintiff's prior work assignments (just as the current team leader, Tom Boyle, was invited by management to the meeting) was used as a pretext for ending his eighteen year career with Verizon because of his age;

    2.) Paul Dooley- younger than the plaintiff, he received a promotion within the DTIG that the plaintiff thought he was going to get; both Mr. Dooley and the plaintiff came from the same prior group, both were hired at the same job level, and both were hired within weeks of each other in the DTIG group;

    3.) Bruce Merkis- a former defendant in this action, believed by the plaintiff to be the prime mover in the decision to axe the plaintiff to get rid of older, W-2 employees in favor of younger, contract workers; in an August 2000 meeting between Mr. Merkis, Harvey Jackson, Bill Driscoll and the plaintiff, not only did Mr. Merkis asked the plaintiff his age, but Mr. Merkis also opined that perhaps the plaintiff had been passed over for promotion because he couldn't keep up the other group members and/or technology;

    3.) Harvey Jackson- a former defendant in this action, believed by the plaintiff to have been the instrument of the decisions made by Mr. Merkis- managed the DTIB from out of state- put Joe Conte in charge of the Verizon engineers in Massachusetts- later came to work in

Massachusetts, often staying with Bill Driscoll - believed by the plaintiff to have let his intimate relationship with Mr. Driscoll cloud his judgment. Also, many times the contractors would report to work the next day, drunk from binge drinking the night before. Not only did Harvey Jackson not discipline or fire any of them, but he sometime went out drinking with them. Yet, the plaintiff was simply fired for politly requesting his former team member attend the preliminary PIP (Performance Improvement Plan) session;

    4.) John May and Audrey Saus- believed by the plaintiff to have been the advisors to Merkis and Jackson in the latter's campaign to eliminate older workers. Also, Ms. Saus of the Human Resource Department, with the help of Harvey Jackson, covered up the investigation involving allegations by Mr. Hasek that team leader Tom Boyle threatened him with a gun. Hence, once again a grave serious act by an employee (to threaten another employee with a gun), but yet no displicinary action or firing took place. Yet, the plaintiff was simply fired for politely requesting his former team member attend the preliminary PIP (Performance Improvement Plan) session;

    5.) Marty Greenwood (Bruce Merkis' boss)- attempted to demoralize the plaintiff by giving him a demeaning assignment: showing computer workers how to sit properly; also, Mr. Jackson nominated the plaintiff as strike co-ordinator. Non of these assignments fit the plaintiff's job description, but were just distractions to keep the plaintiff from his real work, in order to make him look more incompetent during performance appraisals;

    6.) Lyle Hollenbeck- a DTIG contractors who made a racist remark to the plaintiff. Once on the elevator with Lyle, Paul Dooley, plaintiff and others, during a conversation between Lyle and the plaintiff, Lyle said "we hang people like you where I come from." Later, the plaintiff reported this matter to manager Harvey Jackson, but nothing was ever done about it. Yet, the plaintiff was simply fired for politely requesting his former team member attend the preliminary PIP (Performance Improvement Plan) session;

    7.) Jim Pinto, Joe DiRico, Parry Dan, Daniel Bivona and Michelle LaChapelle- DTIG contractors to whom the plaintiff provided training;

    8.) Bill Driscoll- instrumental in deciding which contractors were hired to work in the DTIG; also, Bill on many days would not come to work at all, but would bill Verizon for working. And many days he would come in at 9 AM, 10 AM, 11 AM and sometimes even 1 PM, and would often leave early, but was never disciplined or fired. The plaintiff, however, was simply fired for politely requesting his former team member attend the preliminary PIP (Performance Improvement Plan) session;

    9.) Bill Driscoll, Carol Barboni, Carolyn Pelo, Daniel Bivona, Daniel Kupfeman, James Costello, Jason Welton, Lyle Hollenbeck, Marco Calvo, Michelle LaChapelle,Parry Dan, Stephen McLarey- brought in as Boston contractors for the defendant;

    10.) Maureen Falzone- held top position with the Server Group- spread rumor that the plaintiff, a Muslim, had multiple wives; Harvey Jackson brought this rumor to the plaintiff's attention shortly after Harvey took over the group. The plaintiff assured Harvey that he had only one wife and no girlfriends and objected to this pernicious stereotype;

    11.) Tom Boyle- team leader of the DTIG - physically threatend Bela Hasek, which nearly tore the group apart, but suffered no disciplinary action - took credit for much of the Windows 2000 work done by the plaintiff;

    12.) Bela Hasek- also believed by the plaintiff to have been squeezed out due to age discrimination - although Mr. Hasek was a job level below the plaintiff, Harvey Jackson put the plaintiff under Mr. Haskek's supervision in an effort to humiliate him and pressure him to leave;

13.) Earl Hinkley- also believed by the plaintiff to have been squeezed out due to age discrimination;

14.) Joseph Anderson, for whom the plaintiff worked and who mentored the plaintiff and who can attest to the plaintiff's computer/network skills;

15.) Daniel Casey, for whom the plaintiff worked and who can attest to the plaintiff's computer/network skills;

16.) Charlie Forand, for whom the plaintiff worked and who can attest to the plaintiff's computer/network skills;

17.) David Gaudin, for whom the plaintiff worked and who can attest to the plaintiff's computer/network skills;

18.) Tony Irarragorri, for whom the plaintiff worked and who can attest to the plaintiff's computer/network skills;

19.) Bill Whiting, for whom the plaintiff worked and who can attest to the plaintiff's computer/network skills;

20.) Teresa Weisman, for whom the plaintiff worked and who can attest to the plaintiff's computer/network skills;

22.) Sandra Branker, who can attest to the plaintiff computer/network skills.

c.) No statements have been taken from opposing parties.

d.) The MCAD, NLRB and EEOC investigated the plaintiff's complaint.

## B. Rule 26(a)(1)(B)

The plaintiff has made a good faith attempt to identify documents required to be identified by the rules, but reserves the right to rely on additional documents which may be later identified, or the importance of which to this case may be later made apparent.

Folders have been compiled by the plaintiff. They are available for the defendant's inspection and copying at the plaintiff's expense. The folders deal with the following topics or interactions with the following people:

1.) Bruce Merkis;
2.) Harvey Jackson;
3.) the National Labor Relations Board;
4.) "The Connection with NYNEX" project;
5.) Joe Anderson;
6.) "The Connection with NYNEX" job opening;
7.) organization chart;
8.) EEOC investigation;
9.) Bill Driscoll;
10.) performance appraisals of plaintiff;
11.) plaintiff's job search after being terminated by Verizon;
12.) Joe Conte;
13.) MCAD;

14.) attendance, work assignments, out of office;
15.) medical;
16.) PIP;
17.) Atty. John May;
18.) severance offer;
19.) Human Resources;
20.) Verizon EEO;
21.) Bela Hasek;
22.) Carol Barboni;
23.) Earl Hinkley;
24.) Stephen McLarey;
25.) Tom Boyle;
26.) Maureen Falzone;
27.) Training;
28.) Lyle Hollenbeck;
29.) Jason Welton;
30.) Dan Birona;
31.) Carolyn Pelo;
32.) Michelle LaChapelle;
33.) Yakov Gitterman;
34.) Parry Dan;
35.) Paul Dooley;
36.) Mike Corricelli;
37.) Sarabjeet Singh;
38.) Audrey Saus;
39.) Marty Greenwood;
40.) Fay Southerland;
41.) Maureen Schroder;
42.) Sysprep;
42.) "past bosses";
43.) safety training; and
44.) miscellaneous.

In addition, the plaintiff is providing the defendant at this time with his Federal and State tax returns for the years 2001 - 2004.

Respectfully submitted,
the plaintiff,
James M. Sultan,
by his attorney:

_____
Gregory R. Barison
BBO # 029340

Weston Patrick
84 State Street, 11th Floor
Boston, MA 01209
(617) 742-9310

date: January 25, 2006

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon (each party appearing pro se and) the attorney of record for each (other) party by mail (by hand) on 1-25-06

*GBarison*

GREGORY R. BARISON