UNITED STATES DISTRICT COURT
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES M. SULTAN, <br><br> Plaintiff, <br><br> v. <br><br> VERIZON COMMUNICATIONS INC., <br><br> Defendant. | CIVIL ACTION No. 04 CV 11107 MLW |

## DEFENDANT'S RESPONSE TO THE COURT'S MEMORANDUM AND ORDER TO SHOW CAUSE

Plaintiff James Sultan's ("Sultan") Amended Complaint should be dismissed pursuant to the Court's January 16, 2007 Order to Show Cause ("Order"). In its Order, the Court identified two violations of the Local Rules in Sultan's Opposition to Defendant Verizon Communications Inc.'s ("Verizon") motion for summary judgment: (1) Sultan's failure to provide any legal authority in support of his argument that Verizon should be estopped from claiming it was not his employer and (2) that his brief failed to comply with the Court's page limitations. Sultan was ordered to explain why his Amended Complaint should not be dismissed for these deficiencies and to attach a conforming brief. As described below, Sultan has not complied with the Court's Order.

While Sultan asserts in his Response that the improper formatting of his original brief was due to attorney error, he provides no explanation for his failure to provide legal citations in support of his estoppel argument, as required by the Order. That omission in his Response is for good reason: his argument was and is without any legal basis.

Rather than concede this fact and risk having the Court grant Verizon's motion for summary judgment on this basis, Sultan asserts that his "corrected" brief now includes

B3305609.1

appropriate legal citations. However, in doing so, he fails to inform the Court that he has abandoned his original estoppel argument and replaced it with a new one. Sultan originally had argued that Verizon's defense of this action and the prior administrative proceeding meant that it was estopped from asserting that it was not Sultan's employer. Apparently because there is no legal authority for piercing the corporate veil on this basis, Sultan's "corrected" opposition abandons that theory and sets forth a different one -- that "Verizon treated the plaintiff as its employee and he reasonably so considered himself" and that Verizon should be estopped from claiming it was not his employer. See "Corrected" Opposition, pp. 14-15.

However, the purpose of the Court's Order was to give Sultan a chance to correct deficiencies in his original opposition. The fact that Sultan was unable to fix one of those deficiencies did not give him license to advance a new argument, particularly one that could have been raised in his original opposition but was not. See, e.g., Cochran v. Quest Software, Inc., 328 F.3d 1, 11 (1st Cir. 2003) ("a litigant should not be allowed to switch from theory to theory like a bee in search of honey"). As Sultan has not advanced any case law in support of his original estoppel theory and, in fact, has now abandoned that theory, his Amended Complaint should be dismissed, pursuant to the Order.

Even as to his new theory, Sultan's "corrected" brief fails to comply with the Court's Order. The one case cited by Sultan, In re Collier, 307 B.R. 20 (D. Mass. 2004), stands for the unremarkable proposition that the creditors' proof of claim in a bankruptcy proceeding should not be barred as untimely where they complied with the erroneous deadline set by the bankruptcy court. Id. at 27. The case says nothing about the circumstances under which a corporation can be sued in an employment dispute when it was not the plaintiff's employer.

Sultan's reliance on an inapplicable bankruptcy decision is no accident. The premise of his new argument is that he reasonably relied on alleged statements by Verizon that it was his

employer, namely documents reflecting the Verizon logo and a letter from the company to the National Labor Relations Board. On this basis, Sultan alleges that he can sue Verizon for the alleged acts of his actual employer.[1] However, the law is clear that corporate logos and statements like those relied upon by Sultan are insufficient to pierce the corporate veil and to hold a parent liable for the alleged acts of a subsidiary. Instead, the plaintiff must establish that the two entities are either joint or single employers. See Commodore v. Genesis Health Ventures, Inc., 824 N.E. 2d 453, 456-57, 63 Mass. App. Ct. 57 (Mass. App. Ct. 2005); see also Engelhardt v. S.P. Richards Co., No. 06-1232, 2006 U.S. App. LEXIS 31512, *8, *15-16 (1st Cir. Dec. 22, 2006) (documents with parent's logo and referring to plaintiff as parent's employee were insufficient to overcome presumption that employee was employed by subsidiary and not the parent). Sultan has never claimed that Verizon and his actual employer were joint or single employers.

Further, there is no factual support for his argument. Contrary to the Order, Sultan's "corrected" brief fails to cite to any evidence to suggest that Sultan relied, reasonably or otherwise, on any company document. While the documents are attached to his affidavit in support of his opposition, Sultan does not aver that those documents actually caused him to think that Verizon was his employer. Again, there is a good reason for this omission: Sultan was on notice long ago that Verizon was not his actual employer. A January 17, 2002 position statement to the Equal Employment Opportunity, a copy of which was provided to Sultan, made clear that Sultan's employer was Verizon Services Group and not Verizon Communications. See Exhibit A hereto (without attachments).

---

[1] Sultan does not assert any claim against his actual employer. Nor does he claim that he merely named the wrong corporate entity.

## CONCLUSION

At bottom, Sultan's new estoppel theory is just like his old one -- an argument without any legal or factual support. For these reasons, Verizon respectfully requests that the Court dismiss the Amended Complaint with prejudice for Sultan's failure to comply with the Order and grant such other and further relief as the Court deems just and proper.

VERIZON COMMUNICATIONS INC.

By its attorneys,

s/ Robert A. Fisher
Arthur G. Telegen, BBO #494140
Robert A. Fisher, BBO #643797
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000

Dated: January 25, 2007

## CERTIFICATE OF SERVICE

I, Robert A. Fisher, certify that on January 25, 2007, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to plaintiff by electronically serving his counsel of record.

s/ Robert A. Fisher

**EXHIBIT A**



Paul McGovern
EEO Management Consultant

125 High Street, Room 817
Boston, Massachusetts 02110

Phone: 617 743-4996
Fax:  617 743-1369
paul.s.mcgovern@verizon.com

January 17, 2002

Benjamin Nidus
Investigator
United States Equal Employment Opportunity Commission
Boston Area Office
John F. Kennedy Federal Building
Boston, MA 02203

RE:   James Sultan v. Verizon, No. 161A20036

Dear Mr. Nidus:

The following is submitted as the position statement of Telesector Resources Group, d/b/a Verizon Services Group, a wholly owned subsidiary of Verizon Communications, Inc. ("Verizon," "the Company" or "the Respondent") in relation to the charge filed by James Sultan ("Sultan" or "the Claimant"). Sultan contends that the Company's reason for involuntarily separating him from service on or about May 1, 2001 was pretext for discrimination based on religion, national origin, and age. As shown below, the Company terminated the Claimant for insubordination. The termination was without relation to the Claimant's protected status. For this reason, the charge should be dismissed.

1. Background

Sultan is a 52 year old African-American. He maintains that he is Muslim. He was a Systems Engineer, a management employee, assigned to the Systems Architecture, ISS-PES Desktop Engineering group of the Respondent's Information Technology organization.

As shown in his end of year 2000 performance review, Sultan had significant difficulties concerning job-related communication, leadership, planning and organizing, customer follow-through and timeliness (See Sultan's performance review, Exhibit 1 to Attachment A). To address these issues, his supervisors developed a "Performance Improvement Plan" ("PIP"). (For information on the Company's PIP-related practices, see "Bell Atlantic Supervisor's Guide to Performance Improvement for Management Employees," Attachment B. *) Details of the Claimant's PIP, the Company's attempt to convince the Claimant to conform to PIP procedures, and the Company's subsequent decision to terminate the Claimant upon his refusing to attend a PIP-related meeting without "representation" (i.e., having someone of his choosing present) are outlined in Verizon's response to the unfair labor practices charge which Sultan filed with the National Labor Relations Board ("NLRB") (Attachment A). The NLRB dismissed the Claimant's charge (Attachment C).

It is important to note that Sultan has not been replaced by another employee. Sultan's responsibilities have been assigned to managers who were assigned to the department prior to his termination.

The composition of Sultan's former group does not support an inference of discrimination based on age or race. 27 of the current 56 managers are over 40 years of age (48%). Furthermore, three of the four management promotions made in the group since December 1, 2000 (75%) were of individuals over 40 years of age. (The employees are Paul Dooley, 44; Ellen Festa, 44; Susanna Bortone, 45). Finally, 20% of the group is composed of minority employees.

It is also important to note that supervisors are not generally aware of employees' religion, and that religion is not commonly noted in personnel records. The majority of the managers to whom the Claimant reported were not aware of his religion. None took action based on his religion.

In addition to the matters outlined in the charge, the Claimant has maintained that Bruce Merkis, Director of the group to which the Claimant was assigned, asked him his age during a meeting, and that Merkis or Martin Greenwood, the department's Executive Director, indicated wanting the Claimant "out." While Sultan did meet with Merkis in October of 2000, his allegations concerning matters reviewed during the contact are wholly unfounded. Sultan asked his second level manager, Harvey Jackson, to set up the meeting with Merkis to discuss Sultan's mid-year review for 2000. (The review had put Sultan on notice of the performance issues raised in the end of year review noted above,

---

* Bell Atlantic is Verizon Communication, Inc.'s predecessor in merger and the Claimant's former employer; Verizon has not yet revised PIP documentation to reflect the new corporate name.

the same issues which Sultan's managers had sought to remedy through the PIP; see Attachment A, Exhibit 1.) Jackson and Merkis met with Sultan together. Rather than discuss the Claimant's age or express intent to separate him from service, Merkis spoke to the Claimant's poor performance and the need for improvement. (Indeed, the whole point of the meeting was the same as that of the PIP that followed – for managers to work closely with their reports to improve their performance and thus safeguard their position with the Company.) Sultan did not meet with Greenwood, the group's Executive Director, as Sultan has apparently related. In addition, neither Merkis nor Greenwood commented on the Claimant's age. Furthermore, Company representatives had no intention of terminating the Claimant's employment prior to his refusing to take part in the PIP process.

### 2. Conclusion

The Claimant cannot show discrimination based on religion, age, or national origin/race by direct or circumstantial evidence. The only credible direct evidence relevant to this matter is that the Claimant refused to take part in the application of the Company's standard procedures for performance improvement, the PIP. His allegations concerning managers' comments are uncorroborated and not credible.

To maintain a charge based on circumstantial evidence, the Claimant must show that (1) he is a member of a protected class, (2) he performed his job at an acceptable level, (3) he was terminated, and (4) he was replaced by another individual with qualifications similar to his own. Rivera-Rodriguez v. Frito Lay, Inc., 265 F.3d 15 (1st Cir. 2001) As shown above and in the Company's response to the Claimant's NLRB charge, the Claimant was not performing his job in a satisfactory manner. Indeed, as the Claimant himself admitted in relation to this NLRB charge, his performance had resulted in his being on PIPs on several previous occasions (Attachment A, note 2), and his poor performance in 2000 lead to the institution of the PIP at issue in his charge. In addition, as referred to above, the Claimant was not replaced with another individual. For these reasons, the Claimant cannot establish a prima facie case of discrimination.

Furthermore, the Claimant's refusal to meet with his managers, despite their continued appeals to him, constituted insubordination (Attachment A). Thus, the Claimant's refusal to conform to the Company's legitimate, non-discriminatory performance practices is sufficient both to rebut a prima facie case (had the Claimant established one) and to defeat any inference of pretext. See Williams v. Raytheon Co., No. 99-2152 (1st Cir., July 21, 2000) (Summary judgment for employee under Title VII where employee failed to make a "substantial" showing that the reason for his termination – insubordination – was false.)

      Simply stated, but for the Claimant's unreasonable refusal to conform to standard performance improvement practices, he would likely have remained an employee of the Respondent. He was terminated for insubordination, not for his religion, age, or national origin/race. For this reason, his charge should be dismissed.

                                                Sincerely,

                                                Paul McGovern

cc. James Sultan

Enclosures