UNITED STATES DISTRICT COURT
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES M. SULTAN,<br><br>        Plaintiff,<br><br>v.<br><br>VERIZON SERVICES GROUP,<br><br>        Defendant. | CIVIL ACTION No. 04 CV 11107 MLW |

DEFENDANT'S MOTION FOR RECONSIDERATION

Defendant Verizon Services Group ("VSG") hereby moves for reconsideration of the Court's March 27, 2007 Memorandum and Order ("Order"), denying VSG's motion for summary judgment. In concluding that Sultan's claim under M.G.L. ch. 151B was not preempted by the National Labor Relations Act, the Court relied on the fact that the Regional Director of the National Labor Relations Board ("NLRB") refused to proceed on Sultan's charge of unfair labor practices, citing to the Supreme Court's decision in Hanna Mining Co. v. Dist. 2, Marine Engineers Beneficial Assoc., 382 U.S. 181 (1965). See Order, pp. 2-3. VSG seeks reconsideration of that determination because the Order misapprehended the scope of the Supreme Court's decision in Hanna Mining and misapplied it to the facts of this case.

Contrary to the Order, Hanna Mining does not stand for the proposition that whenever the General Counsel of the NLRB has refused to issue a complaint on a charge of unfair labor practices, then NLRA preemption is inapplicable to a later state law claim. The Supreme Court in San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236 (1959), expressly rejected that proposition, explaining that the General Counsel's refusal to proceed on a charge of unfair labor practices "does not give the States the power to act." Id. at 246. There are good reasons for this:

B3336046.1

The General Counsel may refuse to proceed because the charge is untimely; because the parties have privately resolved the issue; or simply because he has made a determination that issuing a complaint would not serve the purposes of the Act. The dismissal of the charge says little about whether the conduct is or is not "arguably protected" or "arguably prohibited" under the Act..

The Supreme Court's decision in Hanna Mining is consistent with these principles, because it instead rested on a jurisdictional issue, which is absent here. The charge of unfair labor practices at issue in that case related to conduct by supervisors. Id. at 184-85. While the NLRA protects "employees," "supervisors" are expressly excluded from coverage under the Act. See 29 U.S.C. § 152 (3) & (11). As to this threshold jurisdictional issue, the employer in Hanna Mining did not dispute that the individuals in question were supervisors. See id. at 185 n. 5 (the employer's "'appeal makes no affirmative claim'" that the individuals were employees rather than supervisors). Accordingly, the General Counsel affirmed the dismissal of the employer's unfair labor practice charge because the conduct at issue was outside the coverage of the Act. Id. at 258 n.9.

Thus, the issue in Hanna was akin to a Rule 12(b)(1) motion -- that the charge, on its face, fell outside the jurisdiction of the NLRB -- rather than a decision on the merits. That distinction was critical to the Supreme Court's decision that a later state law claim was not preempted:

> [the] central interests served by the *Garmon* doctrine are not endangered by a state injunction when, in an instance such as this, the Board has established that the workers sought to be organized are outside the regime of the Act. . . . Most importantly, the Board's decision on the supervisory question determines, as we have already shown, that none of the conduct is arguably protected nor does it fall in some middle range impliedly withdrawn from state control.

Id. at 192-93. Indeed, in holding that the state law claim was not preempted, the Supreme Court stated that "we do not retreat from Garmon" but characterized the facts of the case as "that far

corner of labor law" that did not justify Garmon's extension. Id. 193 n.14 & 194.

Later decisions by the Supreme Court demonstrate the narrowness of its holding in Hanna Mining. In Lodge 76, International Assoc. of Machinists & Aerospace Workers v. Wisconsin Employment Relations Commission, 427 U.S. 132 (1976), the Supreme Court explained that in Hanna Mining,

> we resolved the 'troublesome question' [of preemption] . . . there presented, by concluding that the Act's amendment expressly to exclude supervisory employees from the critical definition of 'employees' eliminated any serious problems of pre-emption, since 'many provisions of the [NLRA] employing that pivotal term would cease to operate where supervisors were the focus of concern.'

Id. at 137 n.3.

Likewise, in International Longshoremen's Assoc. v. Davis, 476 U.S. 380 (1986), the Supreme Court rejected strict application of Hanna Mining even as to this jurisdictional question of supervisory status. There, two individuals were fired for their union activities. One of the individuals filed a charge with the Board, which was dismissed because he was a supervisor. The other individual sued the union under state law for misrepresentation. Rejecting application of Hanna Mining, the Supreme Court explained that the claim was "arguably" prohibited and therefore preempted, if there was some evidence on which the NLRB could find that the individual was an employee rather than a supervisor. Id. at 394-396. Thus, these cases demonstrate that the critical fact in Hanna Mining was that the underlying conduct involved undisputed supervisors, who are expressly excluded from the Act's coverage.

Unlike this 12(b)(1)-type issue in Hanna Mining, Sultan's charge presented no such jurisdictional question, disputed or not. Instead, the issue before the Regional Director was purely on the merits -- whether there was evidence to support Sultan's claim that he was denied a *Weingarten* representative and terminated for insisting upon that right. In this respect, Sultan asserted under oath to the NLRB that he was entitled to a *Weingarten* representative at the PIP

meeting because his manager Joe Conte told him that the PIP process could lead to his dismissal. See Charge of Unfair Labor Practices, attached to the Affidavit of Robert A. Fisher, Exhibit C, on file with the Court. Sultan further asserted that Conte's statement implied that the PIP meeting was investigatory in nature. Id. At his deposition, Sultan testified that Conte had in fact told him that the PIP process could lead to his dismissal. See Fisher Aff., Ex. A, p. 141. The Regional Director ultimately disagreed with Sultan's view of the evidence and was unwilling to issue a complaint against VSG, but that does not mean that the issue was not "arguable," unless Garmon ceases to have vitality.

However, this weighing of the evidence is precisely the kind of determination that Garmon and its progeny leave to the exclusive jurisdiction of the Board. *Weingarten* cases, like Sultan's, often turn on whether the meeting was or was not one that reasonably could result in discipline, which in turn depends on the particular facts. Compare Quazite Corp., 315 NLRB 1068, 1069-70 (1994) (meeting where manager discussed employee's poor production was sufficient to trigger the right to a representative); Titanium Metals Corp., 340 NLRB 766, 774 (2003) (meeting went beyond merely presenting discipline), with Amoco Chem. Corp., 237 NLRB 394 (1978) (counseling sessions with employee about attendance did not trigger right to a representative); Baton Rouge Water Works, 242 NLRB 995, 997 (197() (mere issuance of discipline insufficient). And of course, because the *Weingarten* principle is a Board-created doctrine, the Regional Director and the Board were free to change their minds about its requirements if they believed it served the purposes of the Act. Compare Certified Grocers of California, 277 NLRB 1211, 1213-14 (1977) (any disciplinary meeting triggers *Weingarten* rule), with Baton Rouge Water Works, Co., 246 NLRB 995 (1979) (reversing Certified Grocers). While the Regional Director sided with VSG in this regard, the issue could have gone either way.

Her refusal to proceed on Sultan's allegation does not mean that preemption is inapplicable and that Sultan is free to pursue a claim based on the same facts under a different, state law theory. See Garmon, 359 U.S. at 247 ("to allow the State to grant a remedy here which has been withheld by the National Labor Relations Board only accentuates the danger of conflict"); Davis, 476 U.S. at 395.

Respectfully, the Court's Order expands the Supreme Court's narrow exception to Garmon in Hanna Mining beyond its actual holding. Garmon compels the conclusion that Sultan's state law claim is preempted and warrants summary judgment to VSG. For these reasons, VSG requests that the Court reconsider its Order and grant summary judgment to VSG.

    VERIZON SERVICES GROUP

    By its attorneys,

    s/ Robert A. Fisher
    Arthur G. Telegen, BBO #494140
    Robert A. Fisher, BBO #643797
    FOLEY HOAG LLP
    155 Seaport Boulevard
    Boston, MA  02210
    (617) 832-1000

Dated: March 30, 2007

## CERTIFICATE OF SERVICE

I, Robert A. Fisher, hereby certify that on March 30, 2007 I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to counsel of record for each other party in this matter.

s/ Robert A. Fisher

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1, I, Robert A. Fisher, hereby certify that on March 30, 2007, I conferred with Gregory Barison, counsel for plaintiff James Sultan, in good faith to resolve the issues presented in the foregoing motion. Notwithstanding this good faith attempt, we were unable to resolve these issues.

s/ Robert A. Fisher