UNITED STATES DISTRICT COURT
THE DISTRICT OF MASSACHUSETTS

JAMES M. SULTAN,

        Plaintiff,

v.

VERIZON SERVICES GROUP,

        Defendants.

CIVIL ACTION No. 04 CV 11107 MLW

## JOINT PRETRIAL MEMORANDUM

1.    **Concise Summary of the Evidence.**

    A.    **Plaintiff's Description of the Evidence.**

At trial, the plaintiff expects to establish the following:

1.) that the Plaintiff, for almost twenty years an employee of Verizon (or its corporate predecessors), was unhappy with developments at work following the merger of his then employer, Bell Atlantic, with GTE to create Verizon. Particularly, he voiced his concerns to his new supervisor, Harvey Jackson, about a new policy in which there was a dramatic increase in the delegation of work and authority away from long time employees to younger contract workers.

2.) that the Plaintiff requested, as he put it, an "audience" with Mr. Jackson's boss, Bruce Merkis.

3.) that such a meeting was held in Pearl River, N.Y. on 7/31/00. Present were the plaintiff, Mr. Merkis, Harvey Jackson and Bill Driscoll (a contract worker to whom much of the plaintiff's engineering work and authority had been given).

4.) that at the Pearl River meeting, Mr. Merkis, in the presence of Mr. Jackson:

    a. Asked the plaintiff his age;

    b. Suggested that he couldn't keep up with the younger workers; and

B3346617.3

    c. Told him he wanted the plaintiff gone.

  5.) that, within days, Mr. Jackson presents the plaintiff with a highly unfavorable job performance review.

  6.) that this was unexpected, because since he started with Verizon's corporate predecessors on April 4, 1983, the plaintiff had received steady raises, bonuses and promotions, going from a yearly salary of $30,790.00 in 1987 to $74,300.00 in 2000.

  7.) that things do not improve, but there was a diversion: a strike. Plaintiff and others in managerial positions fill in until the labor dispute is resolved. Plaintiff renders invaluable service, having been named Strike Coordinator by Harvey Jackson.

  8.) that when things are running normally again, the plaintiff believed his performance was again being unfairly denigrated and that he is being set up for termination due to his age, in conformance with the apparent bias articulated by Bruce Merkis.

  9.) that in March of 2001, Mr. Jackson informed the plaintiff that he was going to be put on a so-called Performance Improvement Plan ("PIP").

  10.) that the Plaintiff, rightly or wrongly, believes he is entitled to have a co-worker present at such a PIP meeting. He has been told the PIP process could lead to his dismissal, so views it as disciplinary.

  11.) that on April 26, 2001, the plaintiff was turned away from the PIP meeting because he showed up accompanied by a co-worker, Bela Hasek.

  12.) that the plaintiff meets with Mr. Jackson on May 1, 2001. After some back and forth between the plaintiff and Mr. Jackson, a PIP meeting was set for the next day.

  13.) that the plaintiff yielded to the defendant's demand that he appear alone at the next day's PIP meeting. He makes it clear beyond peradventure that he will attend the PIP meeting, alone, as demanded by Mr. Jackson, but that he had the right to pursue the issue subsequently.

  14.) that the plaintiff has bowed to Mr. Jackson's demand that he appear the next day for the PIP meeting alone, stating repeatedly that he would do so. He declines, however, to profess, to proclaim, to agree with Mr. Jackson that he, Sultan, is wrong on the issue and the defendant

right. He is thereupon fired.

15.) that after nearly twenty years on the job, the plaintiff is fired, ostensibly for "insubordination," for merely saying that although he would attend the next day's PIP meeting alone, as demanded by Mr. Jackson, he still believed that he was right and that he had the right to pursue a legal remedy subsequently.

16.) that during that private meeting with Mr. Jackson on May 1, 2001, the plaintiff was polite and soft-spoken; he was never belligerent or disrespectful; he agreed to attend the next day's PIP meeting without a co-worker being present.

17.) that a jury could fairly conclude that Mr. Jackson, present at the above-described Pearl River, N.Y., meeting, was executing the explicit desires of his boss, Mr. Merkis, whose statements to the plaintiff strongly smack of age bias, to get rid of the plaintiff.

18.) that a jury could fairly conclude that the ostensible reason for the plaintiff's firing was a pretext for age discrimination and that a discriminatory animus existed.

19.) that, as to damages, the plaintiff's financial losses are as calculated by his expert, Edward Berger, who c.v. and report was provided to the defendant on February 25, 2006 via the Plaintiff's First Supplemental Answers to Defendant's Interrogatories, together with plaintiff's anticipated testimony regarding subsequent earnings.

    B.    <u>Defendant's Description of the Evidence.</u>

Defendant Verizon Services Group submits that the evidence will show that on or about May 1, 2001, Sultan was terminated for a legitimate, non-discriminatory reason -- insubordination. On April 26, 2001, Sultan refused to attend a scheduled meeting regarding his performance without the presence of co-worker, Bela Hasek. On or about May 1, 2006, Sultan was instructed by manager Harvey Jackson that participation in the meeting was a condition of his continued employment and that VSG was not going to abide by his request for Hasek to attend the meeting. Contrary to that instruction, Sultan stated that he would not participate in the meeting without the presence of a co-worker. Jackson informed Sultan that his refusal to

participate in the meeting would constitute insubordination and lead to the separation of his employment. Although Jackson offered to give Sultan time to think about his decision, Sultan responded that he did not need the additional time and that the company had his answer. Sultan's employment was therefore terminated.

In no way was Sultan terminated because of his age in violation of Massachusetts General Laws, ch. 151B. While Sultan claims that manager Bruce Merkis made certain age-related statements at a meeting in Pearl River, New York eight months before his termination, Merkis and other participants at the meeting deny that this ever happened. Instead, the evidence will show that Sultan was terminated because of his refusal to participate in the PIP meeting. There is no evidence that this reason was pretext, let alone for unlawful discrimination.

Because the evidence will show that the Defendant is not liable to Sultan, he is not entitled to any damages. That being said, Sultan's alleged damages are inflated, speculative and contrary to established law.

2. <u>Statement of Stipulated Facts.</u>

1. Defendant Verizon Services Group ("VSG") is a wholly owned, indirect subsidiary of Verizon Communications Inc.

2. Plaintiff James M. Sultan's date of birth is February 14, 1949.

3. Sultan was employed by VSG as a Systems Engineer in Boston, Massachusetts.

4. At the time of his termination, Sultan was part of the Intel System Support Group, formerly known as the Desktop Technology Intel Group.

5. *At the time of his termination, Sultan reported to manager Joseph Conte ("Conte"), who in turn reported to manager Harvey Jackson ("Jackson"). Jackson reported to

---

* Plaintiff does not agree to have this fact read to the jury. To the extent that these facts are not to be read to the jury, then Plaintiff so stipulates.

manager Bruce Merkis ("Merkis").

6. On July 31, 2000, Sultan met with Merkis, Jackson and an individual named Bill Driscoll at Merkis's office in Pearl River, New York.

7. *On March 22, 2001, Conte gave Sultan his year-end 2000 performance appraisal, which had an overall assessment of "Improvement Needed" and notified Sultan that he was going to be placed on a Performance Improvement Plan ("PIP").

8. On April 23, 2001, Conte notified Sultan that they were going to have a meeting to discuss the PIP on April 26, 2001.

9. On April 24, 2001, Sultan requested that his co-worker Bela Hasek ("Hasek") be permitted to attend the meeting. Sultan believed that he was entitled to have a co-worker attend the meeting as his representative under federal labor law.

10. On April 25, 2001, Conte told Sultan that it would not be appropriate for Hasek to attend the meeting.

11. *On April 26, 2001, Sultan, Conte and Jackson met in a conference room for the PIP meeting. When Hasek also arrived, Sultan again asked whether Hasek could sit in on the meeting, and Jackson denied that request. Sultan refused to participate in the meeting without Hasek, and the meeting was cancelled.

12. *On May 1, 2001, Conte and Jackson asked to talk to Sultan in a conference room. At the outset of the meeting, Jackson handed a letter to Sultan. The letter stated as follows:

---

* Plaintiff does not agree to have this fact read to the jury. To the extent that these facts are not to be read to the jury, then Plaintiff so stipulates.

* Plaintiff does not agree to have this fact read to the jury. To the extent that these facts are not to be read to the jury, then Plaintiff so stipulates.

* Plaintiff does not agree to have this fact read to the jury. To the extent that these facts are not to be read to the jury, then Plaintiff so stipulates.

> James,
>
> After our discussion on Thursday about the PIP session, I wanted to make sure that there was no misunderstanding of the purpose of the Performance Improvement Plan (PIP). The PIP is Verizon's process for providing a framework for employee improvement where it is deemed necessary based upon the appraisal process.
>
> The discussions about your performance are something that Verizon considers to be between you and your management team, and therefore it would not be appropriate for you to have other individuals to be present at such discussion as "representation". Your manager team is there at those meetings to provide you the coaching and direction which will allow you to have the opportunity to bring your performance to a satisfactory level. We cannot permit other individuals, outside of the designated management team, to participate or be present at performance discussions.
>
> Participation in the Verizon PIP process is a condition of your continued employment. Your participation is critical to give you the opportunity to bring your performance to a fully satisfactory level. If you choose not to participate in the Verizon PIP process, your employment will be separated.

Jackson then told Sultan that they wanted to have the PIP meeting the following day, May 2, 2001.

13.    *At the conclusion of the meeting on May 1, 2001, Sultan's employment was terminated.

14.    *On May 2, 2001, Sultan filed an unfair labor practice charge against Verizon with the National Labor Relations Board, alleging that Verizon had violated the National Labor Relations Act by denying his request for a representative and then terminating him.

15.    *On August 22, 2001, the National Labor Relations Board notified Sultan that it

---

* Plaintiff does not agree to have this fact read to the jury. To the extent that these facts are not to be read to the jury, then Plaintiff so stipulates.

* Plaintiff does not agree to have this fact read to the jury. To the extent that these facts are not to be read to the jury, then Plaintiff so stipulates.

* Plaintiff does not agree to have this fact read to the jury. To the extent that these facts are not to be read to the jury, then Plaintiff so stipulates.

was unwilling to issue a complaint on his allegations.

16. On October 31, 2001, Sultan filed a charge of discrimination against Verizon with the Massachusetts Commission Against Discrimination ("MCAD") alleging that Verizon had discriminated against him, *inter alia*, on the basis of age.

17. *On April 16, 2004, the MCAD notified Sultan that it was dismissing his complaint of discrimination.

18. *On April 30, 2004, Sultan brought suit against Verizon Communications Inc., alleging age discrimination and a violation of the National Labor Relations Act.

19. *On December 23, 2005, the Court granted in part Sultan's motion to amend the complaint to assert only a claim of age discrimination, pursuant to Massachusetts General Laws ch. 151B. However, the Court held that any claim of age discrimination based upon events that predated Sultan's May 1, 2001 termination were barred by the applicable three-year statute of limitations.

20. *On February 5, 2007, the Court granted Sultan's oral motion to amend the complaint again in order to substitute VSG for Verizon Communications.

3. <u>Contested Issues of Fact.</u>

1. Whether or not Bruce Merkis made age-related statements to Sultan at a meeting in Pearl River, New York on July 31, 2001.

---

* Plaintiff does not agree to have this fact read to the jury. To the extent that these facts are not to be read to the jury, then Plaintiff so stipulates.

* Plaintiff does not agree to have this fact read to the jury. To the extent that these facts are not to be read to the jury, then Plaintiff so stipulates.

* Plaintiff does not agree to have this fact read to the jury. To the extent that these facts are not to be read to the jury, then Plaintiff so stipulates.

* Plaintiff does not agree to have this fact read to the jury. To the extent that these facts are not to be read to the jury, then Plaintiff so stipulates.

   2.   Whether or not on May 1, 2001 Sultan refused to attend the PIP meeting rescheduled for May 2, 2001.

   3.   Whether or not Sultan was terminated for insubordination.

4.   <u>Jurisdictional Questions.</u>

   1.   Whether the Court lacks jurisdiction over Sultan's claim of discrimination because it is preempted by the National Labor Relations Act (29 U.S.C. § 151 et seq.).

5.   <u>Questions Raised By Pending Motions.</u>

   1.   Whether the Court should reconsider its decision, denying Verizon's motion for summary judgment, on the grounds that Sultan's claim is preempted by the National Labor Relations Act.

6.   <u>Issues of Law, Including Evidentiary Questions.</u>

   1.   Whether Plaintiff's expert should be excluded from testifying at trial? <u>See</u> Fed. R. Civ. Pro. 26(a)(2) & 37(c); <u>Pena-Crespo v. Commonwealth of Puerto Rico</u>, 408 F.3d 10 (1st Cir. 2005).

   2.   Whether Plaintiff can establish a prima facie case of age discrimination? <u>See</u> <u>Sullivan v. Liberty Mutual Ins. Co.</u>, 825 N.E.2d 522, 444 Mass. 34 (2005); <u>Knight v. Avon Products</u>, 780 N.E.2d 1255, 438 Mass. 413 (2003).

   3.   Whether Plaintiff can satisfy his burden of demonstrating that VSG's stated reason for his termination -- insubordination -- was pretext for unlawful age discrimination. <u>Abramian v. President & Fellows of Harvard College</u>, 731 N.E.2d 1075, 432 Mass. 107 (2000).

   4.   Whether Plaintiff, if he prevails on liability, can recover double or treble damages, punitive damages and/or reasonable attorney's fees. <u>See</u> M.G.L. ch. 151, § 9

   5.   Whether Plaintiff, if he prevails on liability, can satisfy his burden of presenting

substantial evidence in support of an award of emotion distress damages. See <u>Stonehill College v. MCAD</u>, 808 N.E.2d 205, 441 Mass. 549, 576 (2004); <u>Deroche v. MCAD</u>, 848 N.E.2d 1197, 447 Mass. 1 (2006).

7. <u>Any Requested Amendments to the Pleadings.</u>

    1. None.

8. <u>Any Additional Matters to Aid in the Disposition of the Action.</u>

    1. None.

9. <u>Probably Length of Trial & Whether Jury or Non-Jury.</u>

    5 days, jury

10. <u>Names and Addresses of Witnesses.</u>

    A. <u>Plaintiff's Witnesses.</u>

        1. Plaintiff James M. Sultan, 12 Rangeley Street, Dorchester, MA 02124 (factual)

        2. Bela Hasek, 16 Terrace Hall Avenue, Burlington, MA 01803 (factual)

        3. Edward Berger, 3 School Street, Boston, MA 02108 (expert)

        4. Joseph Anderson, current address unknown (factual)

    B. <u>Defendant's Witnesses.</u>

        1. Bruce Merkis, 2 Blue Hill Plaza, Pearl River, NY 02104 (factual)

        2. Harvey Jackson, 12290 Green Meadow Drive, Apt. 611, Columbia, MD 21044 (factual)

        3. Joseph Conte, 125 High Street, Boston, MA 02110 (factual)

        4. Audrey E. Saus, 535 Hickory Lane, Houston, PA 15342 (factual)

        5. Bill Driscoll, current address unknown (factual)

11. <u>List of Proposed Exhibits.</u>

A.   Agreed-to Exhibits.

1.   E-mail chain among B. Merkis, J. Sultan, J. Conte and others, dated 4/2/01, 4/03/01 & 4/6/01 (VZ 00050-53)

2.   Typed Letter from H. Jackson to J. Sultan, with handwritten notes from J. Sultan (5/1/2001)

3.   E-mail from H. Jackson to J. Sultan, dated 5/1/2001 (VZ 00029)

4.   E-mail between H. Jackson & J. Sultan, dated 5/1/2001 (VZ 00028)

5.   Charge of Discrimination (VZ00027)

6.   E-mail chain between J. Sultan & J. Conte, dated 2/14/2001 & 2/15/2001

7.   E-mail chain between J. Sultan and B. Driscoll, dated 7/18/2000, 7/25/2000 & 7/26/2000

8.   E-mail chain among J. Sultan, B. Driscoll, J. Jackson & B. Merkis, dated 7/21/2000 & 7/25/2000

9.   E-mail chain between J. Sultan and B. Merkis, dated 8/02/2000

10.  E-mail chain among J. Conte, T. Boyle, J. Sultan, dated 4/6/01

11.  E-mail chain about Custom Build -ISO classes

12.  E-mail chain regarding Standard Build - T20 Image

13.  E-mail chain among J. Sultan, J. Conte and others regarding 450/550 Conversion

14.  Diary of James Sultan

15.  Series of E-mail between J. Sultan and K. Powers

16.  Verizon's Bell Atlantic Modified Former Pension Formula

17.  Continuing education certificates and reports submitted as Exhibit F to Plaintiff's Opposition to Defendant's Motion for Summary Judgment.

    18.    Plaintiff's tax returns for the years 2001-2006

B. <u>Exhibit to Which A Party Reserves the Right to Object.</u>

    A.    Memorandum from E. Berger to G. Barison, dated 2/22/2006

    B.    The curriculum vitae of Edward Berger

    C.    Deposition of James M. Sultan, Vol. I & II

    D.    E-mail between J. Conte and H. Jackson, dated 3/23/2001 (VZ 00009-10)

    E.    Employee Corrective Review Form (VZ 00034-36)

    F.    Supervisor's Guide to Performance Improvement for Management Employees

    G.    E-mail among H. Jackson, J. Conte & A. Saus re: Sultan e-mail, dated 4/24/2001 (VZ 00030-31)

    H.    E-mail among J. Conte, H. Jackson and others, dated 4/26/2001 (VZ 00011-12)

    I.    E-mail between H. Jackson and A. Saus, dated 5/1/2001 (VZ 00013-16)

    J.    Charge of Unfair Labor Practices dated May 2, 2001 (VZ 000021)

    K.    August 22, 2001 Letter from R. Pye of the National Labor Relations Board (VZ 00002-3)

    L.    Fax Transmission from J. Sultan to R. Pye, dated 9/10/2001

    M.    Letter from J. Sultan to N. To, dated 4/18/2004

    N.    Series of E-mail regarding E911 Image

    O.    Series of e-mail regarding NT Security setup

    P.    Employee Absence Record 2001

    Q.    Management Performance Appraisal Year-End 2000

    R.    Management Performance Appraisal, Mid-Year 2000

    S.    Management Performance Appraisal, dated March 14, 2000

    T.    Plaintiff's Answers to the Defendant's Interrogatories

    U.    E-mail between J. Sultan and J. Natty, dated June 28, 2001

    V.    Management Performance Appraisal, Performance Year 1998

    W.    Management Performance Appraisal, Year-end 1997

      X.    Management Performance Appraisal, 1996

      Y.    Management Performance Appraisal, Year-end 1995

| VERIZON SERVICES GROUP | JAMES M. SULTAN |
|---|---|
| By its attorneys, | By his attorney, |
| s/ Robert A. Fisher<br>Arthur Telegen, BBO #494140<br>Robert A. Fisher, BBO # 643797<br>Foley Hoag LLP<br>155 Seaport Boulevard<br>Boston, MA 02210<br>(617) 832 – 1000 | s/ Gregory Barison<br>Gregory Barison, BBO # 029340<br>Weston Patrick<br>84 State Street<br>Boston, MA 02109<br>(617) 742-9310 |

Dated: May 1, 2007