UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES SULTAN,<br><br>              Plaintiff<br><br>v.<br><br>VERIZON, et al<br><br>              Defendants | CIVIL ACTION<br>NO. 04-11107-MLW |

   Pursuant to Rule 26(a) of the Federal Rules of Civil Procedure and Local Rules 26.1(B) & 26.2(A), the plaintiff, James Sultan, submits the following initial disclosures based upon information currently available to him.

### A. Rule 26(a)(1)(A) and Local Rule 26.1(B)(1)(a.-d.)

a.)   Filed herewith is the plaintiff's affidavit, itemizing his damages.

b.)   Here are the names and, if known, the addresses and telephone numbers of the individuals thought to have discoverable information and a summary of what knowledge each is thought to have:

      1.) Elaine Heider - caught stealing aptitude tests for computer programmers and giving same to her sister and friends, she was suspended, but not only were she and her sister not fired, they received several subsequent promotions from Verizon. In contrast, the plaintiff's polite insistence on having a co-woker (the plaintiff's former team leader, Bela Hasek) sit in on the preliminary PIP (Performance Improvement Plan) meeting to give input on the plaintiff's prior work assignments (just as the current team leader, Tom Boyle, was invited by management to the meeting) was used as a pretext for ending his eighteen year career with Verizon because of his age;

      2.) Paul Dooley- younger than the plaintiff, he received a promotion within the DTIG that the plaintiff thought he was going to get; both Mr. Dooley and the plaintiff came from the same prior group, both were hired at the same job level, and both were hired within weeks of each other in the DTIG group;

      3.) Bruce Merkis- a former defendant in this action, believed by the plaintiff to be the prime mover in the decision to axe the plaintiff to get rid of older, W-2 employees in favor of younger, contract workers; in an August 2000 meeting between Mr. Merkis, Harvey Jackson, Bill Driscoll and the plaintiff, not only did Mr. Merkis asked the plaintiff his age, but Mr. Merkis also opined that perhaps the plaintiff had been passed over for promotion because he couldn't keep up the other group members and/or technology;

      3.) Harvey Jackson- a former defendant in this action, believed by the plaintiff to have been the instrument of the decisions made by Mr. Merkis- managed the DTIB from out of state- put Joe Conte in charge of the Verizon engineers in Massachusetts- later came to work in

Massachusetts, often staying with Bill Driscoll - believed by the plaintiff to have let his intimate relationship with Mr. Driscoll cloud his judgment. Also, many times the contractors would report to work the next day, drunk from binge drinking the night before. Not only did Harvey Jackson not discipline or fire any of them, but he sometime went out drinking with them. Yet, the plaintiff was simply fired for politely requesting his former team member attend the preliminary PIP (Performance Improvement Plan) session;

      4.) John May and Audrey Saus- believed by the plaintiff to have been the advisors to Merkis and Jackson in the latter's campaign to eliminate older workers. Also, Ms. Saus of the Human Resource Department, with the help of Harvey Jackson, covered up the investigation involving allegations by Mr. Hasek that team leader Tom Boyle threatened him with a gun. Hence, once again a grave serious act by an employee (to threaten another employee with a gun), but yet no displicinary action or firing took place. Yet, the plaintiff was simply fired for politely requesting his former team member attend the preliminary PIP (Performance Improvement Plan) session;

      5.) Marty Greenwood (Bruce Merkis' boss)- attempted to demoralize the plaintiff by giving him a demeaning assignment: showing computer workers how to sit properly; also, Mr. Jackson nominated the plaintiff as strike co-ordinator. Non of these assignments fit the plaintiff's job description, but were just distractions to keep the plaintiff from his real work, in order to make him look more incompetent during performance appraisals;

      6.) Lyle Hollenbeck- a DTIG contractors who made a racist remark to the plaintiff. Once on the elevator with Lyle, Paul Dooley, plaintiff and others, during a conversation between Lyle and the plaintiff, Lyle said "we hang people like you where I come from." Later, the plaintiff reported this matter to manager Harvey Jackson, but nothing was ever done about it. Yet, the plaintiff was simply fired for politely requesting his former team member attend the preliminary PIP (Performance Improvement Plan) session;

      7.) Jim Pinto, Joe DiRico, Parry Dan, Daniel Bivona and Michelle LaChapelle- DTIG contractors to whom the plaintiff provided training;

      8.) Bill Driscoll- instrumental in deciding which contractors were hired to work in the DTIG; also, Bill on many days would not come to work at all, but would bill Verizon for working. And many days he would come in at 9 AM, 10 AM, 11 AM and sometimes even 1 PM, and would often leave early, but was never disciplined or fired. The plaintiff, however, was simply fired for politely requesting his former team member attend the preliminary PIP (Performance Improvement Plan) session;

      9.) Bill Driscoll, Carol Barboni, Carolyn Pelo, Daniel Bivona, Daniel Kupfeman, James Costello, Jason Welton, Lyle Hollenbeck, Marco Calvo, Michelle LaChapelle,Parry Dan, Stephen McLarey- brought in as Boston contractors for the defendant;

      10.) Maureen Falzone- held top position with the Server Group- spread rumor that the plaintiff, a Muslim, had multiple wives; Harvey Jackson brought this rumor to the plaintiff's attention shortly after Harvey took over the group. The plaintiff assured Harvey that he had only one wife and no girlfriends and objected to this pernicious stereotype;

      11.) Tom Boyle- team leader of the DTIG - physically threatend Bela Hasek, which nearly tore the group apart, but suffered no disciplinary action - took credit for much of the Windows 2000 work done by the plaintiff;

      12.) Bela Hasek- also believed by the plaintiff to have been squeezed out due to age discrimination - although Mr. Hasek was a job level below the plaintiff, Harvey Jackson put the plaintiff under Mr. Haskek's supervision in an effort to humiliate him and pressure him to leave;

<span style="color:red">
13.) Earl Hinkley- also believed by the plaintiff to have been squeezed out due to age discrimination;

14.) Joseph Anderson, for whom the plaintiff worked and who mentored the plaintiff and who can attest to the plaintiff's computer/network skills;

15.) Daniel Casey, for whom the plaintiff worked and who can attest to the plaintiff's computer/network skills;

16.) Charlie Forand, for whom the plaintiff worked and who can attest to the plaintiff's computer/network skills;

17.) David Gaudin, for whom the plaintiff worked and who can attest to the plaintiff's computer/network skills;

18.) Tony Irarragorri, for whom the plaintiff worked and who can attest to the plaintiff's computer/network skills;

19.) Bill Whiting, for whom the plaintiff worked and who can attest to the plaintiff's computer/network skills;

20.) Teresa Weisman, for whom the plaintiff worked and who can attest to the plaintiff's computer/network skills;

22.) Sandra Branker, who can attest to the plaintiff computer/network skills.
</span>

c.) No statements have been taken from opposing parties.

d.)   The MCAD, NLRB and EEOC investigated the plaintiff's complaint.

**B. Rule 26(a)(1)(B)**

The plaintiff has made a good faith attempt to identify documents required to be identified by the rules, but reserves the right to rely on additional documents which may be later identified, or the importance of which to this case may be later made apparent.

Folders have been compiled by the plaintiff. They are available for the defendant's inspection and copying at the plaintiff's expense. The folders deal with the following topics or interactions with the following people:

1.) Bruce Merkis;
2.) Harvey Jackson;
3.) the National Labor Relations Board;
4.) "The Connection with NYNEX" project;
5.) Joe Anderson;
6.) "The Connection with NYNEX" job opening;
7.) organization chart;
8.) EEOC investigation;
9.) Bill Driscoll;
10.) performance appraisals of plaintiff;
11.) plaintiff's job search after being terminated by Verizon;
12.) Joe Conte;
13.) MCAD;

14.) attendance, work assignments, out of office;
15.) medical;
16.) PIP;
17.) Atty. John May;
18.) severance offer;
19.) Human Resources;
20.) Verizon EEO;
21.) Bela Hasek;
22.) Carol Barboni;
23.) Earl Hinkley;
24.) Stephen McLarey;
25.) Tom Boyle;
26.) Maureen Falzone;
27.) Training;
28.) Lyle Hollenbeck;
29.) Jason Welton;
30.) Dan Birona;
31.) Carolyn Pelo;
32.) Michelle LaChapelle;
33.) Yakov Gitterman;
34.) Parry Dan;
35.) Paul Dooley;
36.) Mike Corricelli;
37.) Sarabjeet Singh;
38.) Audrey Saus;
39.) Marty Greenwood;
40.) Fay Southerland;
41.) Maureen Schroder;
42.) Sysprep;
42.) "past bosses";
43.) safety training; and
44.) miscellaneous.

In addition, the plaintiff is providing the defendant at this time with his Federal and State tax returns for the years 2001 - 2004.

                Respectfully submitted,
                the plaintiff,
                James M. Sultan,
                by his attorney:


                ------------------------
                Gregory R. Barison
                BBO # 029340

Weston Patrick
84 State Street, 11th Floor
Boston, MA 01209
(617) 742-9310

date: January 25, 2006