UNITED STATES DISTRICT COURT
THE DISTRICT OF MASSACHUSETTS

JAMES M. SULTAN,

Plaintiff,

v.

VERIZON SERVICES GROUP,

Defendants.

CIVIL ACTION No. 04 CV 11107 MLW

DEFENDANT'S TRIAL BRIEF &
PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Defendant Verizon Services Group ("VSG") hereby submits its trial brief to aid the Court

in resolving certain legal issues that are anticipated to arise during the trial. Further, as the

parties have stipulated to trial by the Court instead of a jury, VSG submits proposed findings of

fact and conclusions of law.

I.    Concise Summary of the Evidence to Be Presented At Trial.

As more fully set forth below in its proposed findings of fact, VSG submits that the

evidence will show that on May 1, 2001, Sultan was terminated for a legitimate, non-

discriminatory reason -- insubordination. In March 2001, Sultan's manager, Joseph Conte

("Conte"), informed Sultan that he was going to be placed on a performance improvement plan

("PIP"). On April 23, 2001, Conte notified Sultan that there would be a meeting to discuss the

PIP on April 26, 2006. The following day, Sultan requested that co-worker Bela Hasek

("Hasek") be permitted to attend the meeting as his representative, and Conte told Sultan that it

would not be appropriate for Hasek to attend the meeting. Nonetheless, Sultan brought Hasek to

the April 26, 2001 meeting. Sultan again asked if Hasek could attend, and manager Harvey

Jackson ("Jackson") denied that request. Sultan then refused to attend the PIP meeting without Hasek's presence. The meeting was canceled.

On May 1, 2006, Jackson and Conte again met with Sultan. They provided him a memorandum explaining that participation in the meeting was a condition of his continued employment and that VSG was not going to abide by his request for Hasek to attend the meeting. Contrary to that instruction, Sultan stated that he would not participate in the meeting without the presence of a co-worker. Jackson informed Sultan that his refusal to participate in the meeting would constitute insubordination and lead to the separation of his employment. Although Jackson repeatedly offered to give Sultan time to think about his decision, Sultan responded that he did not need the additional time and that the company had his answer. Sultan's employment was therefore terminated.

In no way was Sultan terminated because of his age in violation of Massachusetts General Laws, ch. 151B. While Sultan claims that director Bruce Merkis ("Merkis") made certain age-related statements at a meeting in Pearl River, New York nine months before his termination, Merkis and the two other participants at the meeting deny that this ever happened. Consistently, Sultan's diary entry for this meeting makes no mention of any age-related comments by Merkis. Regardless, Merkis was not involved in Sultan's termination, and the evidence will show that Sultan was terminated because of his repeated refusal to participate in the PIP meeting. There is no evidence that this reason was pretext, let alone for unlawful discrimination.

Because the evidence will show that VSG is not liable to Sultan, he is not entitled to any damages. That being said, Sultan's alleged damages are inflated, speculative and contrary to established law.

II.    <u>Plaintiff's Burden of Proof At Trial.</u>

Massachusetts General Laws ch. 151B, § 4 states that it is an unlawful practice "[f]or an employer in the private sector, by himself or his agent, because of the age of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual . . ." "Age" is defined under the statute as "greater than 40 years" of age. M.G.L. ch. 151B, § 1. Regardless of whether this case is characterized as one involving direct or indirect evidence, to establish a claim under age discrimination, Sultan must prove the following four elements: "membership in a protected class, harm, discriminatory animus, and causation." <u>See</u> <u>Sullivan v. Liberty Mutual Insurance Co.</u>, 825 N.E.2d 522, 530, 444 Mass. 34 (2005).

In a case involving indirect or circumstantial evidence, the familiar three-stage burden shifting paradigm is applied. <u>Id.</u> at 39. First, Sultan must establish a prima facie case: that (1) he was over the age of 40 at the time of his termination; (2) he performed his job at an acceptable level; (3) he was terminated and (4) his termination occurred under circumstances giving rise to an inference of discrimination. <u>See</u> <u>id.</u> at 531; <u>Knight v. Avon Products</u>, 780 N.E.2d 1255, 1258, 438 Mass. 413, 414 (2003). VSG does not dispute that Sultan was over the age of 40 at the time of his termination.

At the second stage, VSG must articulate a legitimate, non-discriminatory reason for its action. <u>Abramian v. President & Fellows of Harvard College</u>, 731 N.E.2d 1075, 1084, 432 Mass. 107, 117 (2000). At the third stage, Sultan must demonstrate that VSG's proffered reason is pretext for unlawful discrimination. <u>See</u> <u>id.</u> at 1085 ("At the third stage the employee must show that the basis of the employer's decision was unlawful discrimination"); <u>Knight</u>, 780 N.E.2d at 1262.

While pretext for unlawful discrimination may be proven by disparate treatment, the employees involved in the other incidents must be similarly situated to the plaintiff. The

treatment of employees who engaged in different types of misconduct or violated different policies is not probative for establishing pretext for unlawful discrimination. See Matthews v. Ocean Spray, Cranberries, Inc., 686 N.E.2d 1303, 1310-11, 426 Mass. 122 (1997).

This case does not warrant a "mixed motive" analysis and the shifting of the burden of proof to VSG. A "mixed motive" analysis is used where there is direct evidence of discrimination. Under Massachusetts law, direct evidence is rare and is limited to evidence that "results in an inescapable or at least highly probable inference that a forbidden bias was present." See Wynn & Wynn, P.C. v. MCAD, 729 N.E.2d 1068, 1078 (2000) (citations omitted). Stray remarks and "statements by decision makers unrelated to the decision process itself do not suffice to satisfy the plaintiff's threshold burden in these cases." Id.

This case presents no such "inescapable" conclusion. Here, Sultan testified at his deposition that manager Bruce Merkis made certain age related comments at a meeting nine months before his termination. Every other participant at that meeting will testify that no such comments were ever made. Moreover, Sultan's own diary entry for the meeting and his interrogatory answers refute his allegations. Assuming that Sultan testifies at trial consistent with his deposition testimony (as opposed to his interrogatory answers or his diary entry), that testimony standing alone is insufficient to shift the burden of proof to VSG.

Even if one assumed that Sultan is telling the truth about the meeting, Merkis undisputedly was not the person who terminated Sultan nine months later. Compare Wynn, 729 N.E.2d at 1078 (explaining that statements by a non-decision maker are insufficient); Mole v. Univ. of Mass., 814 N.E.2d 329, 343, 442 Mass. 582 (2004) (explaining that "[d]espite a . . . discriminatory motive on the part of a supervisor who recommends that some adverse action be taken against an employee, a third person's independent decision to take an adverse action

breaks the causal connection between the supervisor's . . . discriminatory animus and the adverse

action"). Thus, even if the Court were to find that Merkis made the comments alleged by Sultan

-- a finding that would require discrediting three witnesses and the documentary evidence -- it

does not mean that the burden of proof shifts to VSG. Instead, Sultan still has to prove

causation: that the two managers who were involved in Sultan's termination, Joseph Conte and

Harvey Jackson, adopted or shared Merkis's alleged discriminatory animus, rather than acted

independently. See id.; see also Lipchitz v. Raytheon Co., 751 N.E.2d 360, 371-372, 434 Mass.

493 (2001).

     Finally, while the Court raised the "mixed motive" issue in its decision on VSG's motion

for summary judgment, Sultan has never claimed that this case is a direct evidence case. In his

opposition to VSG's motion for summary judgment, Sultan conceded that the three-stage

analysis for indirect evidence cases is applicable here.

III.    Testimony of Bela Hasek.

     As discussed at the pretrial conference, Sultan intends to call Bela Hasek as a witness and

question him regarding what he allegedly overheard being said by Harvey Jackson. According

to Hasek's affidavit, he apparently would testify that Jackson said, "Sultan is at his mosque

again," "No, we do not want to get into religion," and "Let's just pursue the PIP process . . .

that's our best bet for getting rid of him."

     This testimony should not be admitted, as it is not relevant and, even if it were, its

probative value is outweighed by the danger of unfair prejudice or confusion of the issues. See

F.R.E. 402 & 403. Sultan alleges age discrimination, not religious discrimination. If the fact-

finder were to conclude based upon Hasek's anticipated testimony that VSG terminated Sultan

because of his religion, then VSG should prevail. See Lipchitz v. Raytheon Co., 751 N.E.2d

360, 370, 434 Mass. 493 (2001) (explaining that the plaintiff bears the burden of establishing that the plaintiff's termination was because of the alleged discrimination, not just pretext). However, there is an obvious risk of prejudice by that testimony. See, e.g., Kelly v. Boeing Petroleum Svcs. Inc., 61 F.3d 350, 357-58 (5th Cir. 1995) (affirming exclusion of evidence relating to derogatory remarks by the decision-maker where the remarks were related to race, sex and national origin but not disability discrimination, as alleged by the plaintiff); Rauh v. Coyne, 744 F.Supp. 1181, 1183 (D. D.C. 1990) (excluding testimony of employer's alleged discrimination against blacks in gender discrimination case where the proposed evidence "would be likely of little probative value but it would have very great potential for prejudice"); Waters v. Genesis Health Ventures, Inc., 400 F.Supp. 2d 808, 813-14 (E.D. Pa. 2005) (evidence of sexual harassment in race discrimination case is not relevant and the prejudicial effect outweighs any probative value).

Sultan claims that the testimony is relevant to prove that VSG's asserted reason for Sultan's termination is pretext for unlawful age discrimination.[1] It is not. VSG will present evidence that Sultan was terminated for insubordination -- he refused to participate in the PIP meeting without the presence of a co-worker. The first two sentences of Hasek's anticipated testimony regarding Sultan's religion do not tend to disprove that fact. The only purpose of that testimony is inflammatory and to confuse the issue regarding discriminatory motive.

The third sentence of Hasek's anticipated testimony -- that Jackson sought to eliminate Sultan through the PIP process -- also is irrelevant and confusing because it is counterfactual. Whether or not the PIP was a "setup" is not at issue in this case. It is undisputed that Sultan was not terminated for failing to meet the terms of the PIP, but for refusing to participate in the PIP

---

[1]  Sultan's argument in this regard supports VSG's claim that this case involves indirect evidence.

without the presence of a co-worker. Nothing about Hasek's testimony goes to that actual issue, let alone suggests that Sultan's refusal to participate in the meeting without Hasek's presence was not the real reason for his termination. The testimony should be excluded.

IV.    Documents Relating to the Proceeding Before the National Labor Relations Board.

As the Court is aware, Sultan filed a charge of unfair labor practices with the National Labor Relations Board one day after the termination of his employment. VSG intends to offer into evidence several documents relating to that prior proceeding before the Board, including Sultan's charge of unfair labor practices, the August 2001 letter from the Regional Director of the Board refusing to issue a complaint on his allegations and Sultan's appeal of that determination. VSG also may rely upon Sultan's prior sworn testimony regarding the Board proceedings. As described below, while Sultan contends that these documents are irrelevant and that their admission at trial would be prejudicial, these documents are critical to VSG's defense of this action.

A.    Evidence From the Board Proceeding Refutes Sultan's Allegations of Age Discrimination.

First, evidence relating to the Board proceeding demonstrates that Sultan was not terminated because of his age. Sultan asserted to the Board a different reason for his termination -- that he was terminated for requesting a *Weingarten* representative in violation of the National Labor Relations Act. He did not recast that claim as one for age discrimination until after the Board refused to proceed on his labor law claim.

Further, the documents support VSG's assertion that Sultan was terminated for insubordination. As set forth above, Sultan repeatedly refused to participate in the PIP meeting without the presence of a *Weingarten* representative. Sultan's incorrect belief that VSG's

motivation for the termination constituted a violation of the federal labor laws undercuts his current claim that the reason was pretext for unlawful age discrimination.

This is not to say that the Court is to decide a question of federal labor law. Instead, VSG is entitled as part of its defense to offer evidence relating to the Board proceeding to show that Sultan understood -- at least until the Board rejected his claims -- that his termination had nothing to do with his age, but instead his request for a *Weingarten* representative. Sultan's suggestion that the evidence is not probative is absurd.

B.    VSG May Create A Record Regarding the Issue of Preemption.

In addition to the fact that evidence relating to the Board proceeding undercuts Sultan's allegations of age discrimination, the evidence also is necessary to establish VSG's affirmative defense that Sultan's claim is preempted by the National Labor Relations Act, so that VSG may move for a directed verdict on that basis. As the Court is well aware, the Board has exclusive jurisdiction under the Act to hear claims of unfair labor practices, see 29 U.S.C. § 160, and thus the Supreme Court has held that "[w]hen an activity is arguably subject to § 7 or § 8 of the National Labor Relations Act . . . the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board." San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 245 (1959); see also Tamburello v. Comm-Tract Corp., 67 F.3d 973, 976 (1st Cir. 1995) (explaining that the Board has primary and exclusive jurisdiction over claims of unfair labor practices). In Chaulk Services, Inc. v. MCAD, 70 F.3d 1361, 1366-67 (1st Cir. 1995), the Court of Appeals for the First Circuit held that an employee's claim of discrimination is preempted by the Act if it is founded on the identical facts which provide the basis for an unfair labor practice charge.[2] The evidence from the Board proceeding and other evidence will

---

[2]    See also Local Union No. 12004, United Steelworkers of America v. MCAD, 377 F.3d 64, 78-79 (1st Cir. 2004) (explaining that much of the conduct underlying claim of discrimination based on sexual orientation, pending before

show that Sultan's allegations of age discrimination are based on the same facts as his underlying Board claim and thus should be preempted.

While VSG acknowledges that the Court denied its motion for summary judgment on this basis, that determination does not preclude the Court's determination of the preemption issue on a motion for a directed verdict based upon a fuller record. The issue is one of subject matter jurisdiction, which can be raised any time, because if the claim is preempted, then the Court's jurisdiction is extinguished. See Chaulk, 70 F.3d at 1367.

The only basis by which VSG could be precluded from moving for a directed verdict on this basis is if the Court held on summary judgment that the Regional Director's refusal to issue a complaint of unfair labor practices means that Sultan's state law claim could never be preempted. If this was the Court's holding, it essentially transforms Sultan's filing of a Board charge into an exhaustion requirement, meaning that once the Board refused to proceed on his claim, Sultan was free to recast his claim as one for discrimination under state law.

Respectfully, Garmon and its progeny reject that notion. In Garmon, the Supreme Court explained:

> To require the States to yield to the primary jurisdiction of the National Board does not ensure Board adjudication of the status of a disputed activity. . . . [T]he Board may decide that an activity is neither protected nor prohibited, and thereby raise the question whether such activity may be regulated by the States. . . However, the Board may also fail to determine the status of the disputed conduct by declining to assert jurisdiction, or by refusal of the General Counsel to file a charge, or by adopting some other disposition which does not define the nature of the activity with unclouded legal significance. . . . It follows that the failure of the

_____

MCAD, was protected or arguably prohibited by the Act and thus preempted); Morgan v. Mass. General Hosp., 901 F.2d 186, 193-94 (1st Cir. 1990) (claim of retaliation under the Civil Rights Act was preempted by federal labor law); Class v. Ranger American Armored Svcs., Inc., 245 F.Supp. 2d 370, 374 (D. P.R. 2003) (dismissing complaint on preemption grounds where "Plaintiff's claims of age discrimination . . . are founded upon the identical facts which provide the basis for the unfair labor practice charge"); Lemerich v. International Union of Operating Engineers, 171 L.R.R.M. (BNA) 2560 (D. Me. 2002) (plaintiff's state law claim of sex discrimination "raises the identical controversy that would be presented by unfair labor dispute before the NLRB" and therefore is not saved from preemption).

> Board to define the legal significance under the Act of a particular activity does
> not give the State power to act. In the absence of the Board's clear determination
> that an activity is neither protected nor prohibited or of compelling precedent
> applied to essentially undisputed facts, it is not for this Court to decide whether
> such activities are subject to state jurisdiction. . . . The governing consideration is
> that to allow the States to control activities that are potentially subject to federal
> regulation involves too great a danger of conflict with national labor policy.

Garmon, 359 U.S. at 245-46; see also Local 926, International Union of Operating Engineers v.

Jones, 460 U.S. 669, 680 (1983) (Regional Director's refusal to issue a complaint addressed the

merits of charge and therefore did not clear the way for a state court cause of action); Muenchow

v. The Parker Pen Co., 615 F.Supp. 1405, 1411 (W.D. Wisc. 1985) (finding claim to be

preempted and explaining that regional director's refusal to issue a complaint on plaintiff's

charge of unfair labor practice did not mean that the conduct was not arguably protected or

prohibited); Colombia Park Business Center Corp. v. Perez, 169 L.R.R.M. (BNA) 3069, 2002

WL 570666, *7 (D. Minn. April 12, 2002) (regional director's refusal to issue a complaint

because he is not convinced of the merits does not preclude preemption of state law claim);

Volentine v. Bechtel, Inc., 27 F.Supp. 2d 728 (E.D. Tex. 1998) (state law claims preempted,

despite prior refusal of Board to issue complaint on charge of unfair labor practices); Bud Antle,

Inc. v. Barbosa, 45 F.3d 1261, 1369-70 (9th Cir. 1994) (enjoining state law proceeding as

preempted where Regional Director's decision did not constitute a decision with "unclouded

legal significance" that the conduct at issue was neither prohibited nor protected).

The case cited by the Court in its decision on summary judgment, Hanna Mining Co. v.

Dist. 2, Marine Engineers Beneficial Assoc., 382 U.S. 181 (1965), is not to the contrary. There,

the key fact was not the dismissal of the unfair labor practice charge, but that it was undisputed

that the employees whose conduct was at issue were supervisors and thus necessarily outside of

the coverage of the Act. Compare id. at 184-85 n. 5 with International Longshoremen's Assoc.

v. Davis, 476 U.S. 380, 394 (1986) (state law claim was preempted if there was some evidence on which Board could conclude that individual was an "employee" under the Act rather than a "supervisor" excluded from the Act). In Hanna, the Supreme Court did not retreat from Garmon but merely held that the conduct at issue was neither arguably protected nor arguably prohibited.[3] Hanna, 382 U.S. at 194.

V.    Sultan's Appeal of the MCAD's Lack of Probable Cause Determination (Exhibit M).

VSG does not seek to introduce the Massachusetts Commission Against Discrimination's ("MCAD") determination that Sultan's charge of discrimination lacked probable cause. Instead, VSG seeks to introduce Sultan's written appeal of that determination because in that document, like the evidence relating to the Board proceeding, he asserts that his termination was due to a reason other than age -- his exercise of his right to have a co-worker present at the PIP meeting. The document is not hearsay as it is an admission by a party opponent. Nor is it irrelevant, as it goes directly to the matter at issue -- whether VSG terminated Sultan because of his age.

Further, the document supports VSG's affirmative defense that his claim of age discrimination is preempted. In that document, Sultan asserts that the MCAD should not have found a lack of probable cause because he alleges that VSG unlawfully terminated him for pressing his *Weingarten* right. Thus, the document shows that his age discrimination claim is inextricably linked to his assertion under the federal labor laws.

---

[3]  The Court denied VSG's motion for reconsideration of the summary judgment decision on the grounds that VSG could have distinguished Hanna Mining in its original summary judgment papers. However, not only did Sultan never claim that Hanna Mining applied here, but, more fundamentally, he also never argued that the Regional Director's refusal to issue a complaint on his charge of unfair labor practices meant that he was free to pursue a claim under state law based upon the same facts. Instead, Sultan argued that his charge of unfair labor practices never encompassed his termination. The Court seemingly rejected that argument.

VI.   <u>Damages.</u>

A.   <u>Back Pay & Front Pay.</u>

Any back pay or front pay award under M.G.L. ch. 151B cannot be determined by speculation or guess and must be causally related to the alleged wrongdoing. <u>See</u> <u>Conway v. Electric Switch Corp.</u>, 523 N.E.2d 255, 257, 402 Mass. 385, 389 (1988).  Further, "[t]he greater the period of time upon which a front pay award is calculated in a case involving an at-will employee the less likely it is that the loss of future earnings can be demonstrated with any degree of certainty or can reasonably be attributed to the illegal conduct of the employer."  <u>Id.</u>; <u>see also</u> <u>Handrahan v. Red Roof Inns, Inc.</u>, 680 N.E.2d 568, 577, 43 Mass. App. Ct. 13 (1997).

Any award of back pay or front pay must reduced by the plaintiff's income from other employment or from unemployment insurance.  <u>Conway</u>, 523 N.E.2d at 257; <u>see also</u> <u>Blockel v. J.C. Penney Co.</u>, 337 F.3d 17, 27-28 (1st Cir. 2003).  Any front pay award must be calculated as its present value.  <u>See</u> <u>Boothby v. Texon, Inc.</u>, 608 N.E.2d 1028, 414 Mass. 468 (1993).

B.   <u>Punitive Damages.</u>

Under M.G.L. ch. 151, § 9, Sultan is not entitled to an award of punitive damages, even if the Court should find in his favor on liability.  <u>See</u> <u>Fontaine v. Ebtec Corp.</u>, 613 N.E.2d 881, 889 (1993) (explaining that M.G.L. ch. 151, § 9 does not permit an award of punitive damages for age discrimination).  The Court may award multiple damages if the discriminatory act or practice was committed with knowledge or reason to know that the act or practice at issue violated M.G.L. ch. 151B, § 4 as to age discrimination.  <u>See</u> M.G.L. ch. 151B, § 9; <u>see also</u> <u>Cormier v. Pezrow New England, Inc.</u>, 771 N.E.2d 158, 165, 437 Mass. 302 (2002).  The Supreme Judicial Court has explained that multiple damages should only be awarded for "conduct that is

outrageous 'because of the defendant's evil motive or his reckless indifference to the rights of others.'"  Id. (citations omitted).

        C.     Emotional Distress Damages.

       An award for emotional distress damages must rest on substantial evidence and must be based on just and reasonable inferences.  A finding of discrimination is insufficient, by itself, to permit an inference of emotional harm.  The Supreme Judicial Court has identified a number of factors that must be considered in determining the existence and extent of emotional distress:  1. the nature and character of the alleged harm; 2. the severity of the harm; 3. the length of time the plaintiff has suffered and reasonably expects to suffer; and 4. whether the plaintiff has attempted to mitigate the harm, for example, by seeking counseling or taking medication.  The failure to seek counseling or treatment, the lack of any physical manifestations of distress and the failure to demonstrate the need to curtail life activities because of the distress are all grounds for refusing to award emotional distress damages.  See DeRoche v. Massachusetts Comm'n Against Discrimination, 447 Mass. 1, 7-9 (2006); Stonehill College v. Massachusetts Comm'n Against Discrimination, 441 Mass. 549, 575-577 (2004).

VII.    Proposed Findings Of Fact.

       VSG submits that the credible evidence at trial will establish the following proposed findings of fact:

       1.      VSG is a wholly owned, indirect subsidiary of Verizon Communications Inc. ("Verizon").

       2.      Sultan's date of birth is February 14, 1949.

       3.      Sultan was employed by VSG as a Systems Engineer in Boston, Massachusetts.

       4.      At the time of his termination, Sultan was part of the Intel System Support Group,

formerly known as the Desktop Technology Intel Group ("DTIG"). DTIG was and continues to be responsible for building custom "images." A custom image essentially is a bundle of software that is engineered to work together in a functional way and that can be duplicated across hundreds or thousands of different computers.

5.      During the first half of 2000, Sultan reported to senior manager Harvey Jackson ("Jackson"), who in turn reported to director Bruce Merkis ("Merkis"). Jackson was based in Silver Spring, Maryland, and Merkis was based in Pearl River, New York.

6.      VSG had a practice of using contractors to supplement the DTIG work force. One such contractor was Bill Driscoll ("Driscoll"). Driscoll was a team leader on the team responsible for problems and maintenance issues related to a custom image. As team leader, Driscoll served as a technical lead but did not supervise VSG employees.

7.      During the first half of 2000, Sultan worked on the same team as Driscoll. Sultan generally disagreed with VSG's use of contractors and did not like working with Driscoll.

8.      On July 21, 2000, Driscoll asked Sultan, via e-mail, to complete a task for another employee, Art Tarricone. Sultan responded to Tarricone that the task would not be done by him because he did not know how to perform it. Driscoll forwarded Sultan's response to Jackson. Jackson then wrote an e-mail to Sultan explaining that he was displeased by Sultan's response. Jackson stated that there had been training on the task and that Sultan should have sought assistance, if needed, rather than just say he did not know how to perform the function.

9.      On July 25, 2000, in response to this series of e-mail, Sultan requested a meeting with Jackson, Merkis and Driscoll. Jackson agreed to schedule a meeting.

10.      That same day, Driscoll requested that he and Sultan meet to discuss certain tasks relating to the maintenance of the server. Sultan refused to meet before the meeting with

Merkis.

11.    On July 31, 2000, Sultan met with Merkis, Jackson and Driscoll at Merkis's office

in Pearl River, New York.  This was the first time that Merkis had met or spoken directly to

Sultan.  Merkis's prior knowledge of Sultan was limited to reports from Jackson relating to

issues with Sultan's work performance.

12.    The overall tenor of the meeting was positive.  Merkis described his expectations

and told Sultan that there would be opportunities for him if he stepped up his performance.

13.    Sultan claims that during the meeting, Merkis asked him his age and told him that

he wanted Sultan out of his organization within 30 days.  This testimony cannot be credited.

Merkis, Jackson and Driscoll deny that Merkis made any of these statements.  Sultan's diary

entry for that day also is contrary to Sultan's testimony about the meeting.  His testimony also is

inconsistent with an e-mail that Sultan wrote to Merkis a few days after the meeting, in which he

characterized the meeting as one of the "good days."

14.    At Sultan's request, Jackson and Merkis agreed to transfer Sultan from the team

that included Driscoll to the image build team led by manager Joe Conte ("Conte").  Conte

reported to Jackson.  Sultan liked working for Conte and viewed the transfer as a positive

development.  This is further evidence contradicting Sultan's testimony about what Merkis

allegedly said at the July 31, 2000 meeting.

15.    In August 2000, Jackson completed Sultan's mid-year performance evaluation

and rated Sultan as needing improvement in several different areas of his job.  Among other

issues, Jackson explained that Sultan's project documentation required revisions and did not

meet applicable standards.  He also stated that Sultan needed to improve his ability to analyze

and solve complex engineering problems and to proactively take on work assignments.

16.    Over the next few months, Conte also became dissatisfied with Sultan's work performance. Sultan held a career level of W-5, which is the highest level engineer short of being a manager. Although a W-5 should be able to act independently, Sultan depended upon the assistance of others to complete projects and required repeated prompting to take initiative. Sultan also found unclear areas of the build process that were within his primary job responsibilities. Conte was also dissatisfied with Sultan's project documentation and his communication with other members of the team. These issues were consistent with Jackson's prior assessment of Sultan's work performance.

17.    On March 22, 2001, Conte gave Sultan his year-end 2000 performance appraisal, which had an overall assessment of "Improvement Needed" and notified Sultan that he was going to be placed on a Performance Improvement Plan ("PIP").

18.    As set forth in Verizon guidelines, a PIP is a tool to assist management in addressing an employee's performance issues. A PIP is a constructive plan for focusing on performance issues and resolving them within a period of time. Under the guidelines, an employee may be discharged if he is unwilling to participate in the PIP process.

19.    On April 23, 2001, Conte notified Sultan that they were going to have a meeting to discuss his PIP on April 26, 2001. Conte had prepared a plan for Sultan that set forth certain expectations and performance issues to be addressed. The purpose of the April 26, 2001 was to discuss this plan.

20.    On April 24, 2001, Sultan requested via e-mail that his co-worker Bela Hasek ("Hasek") be permitted to attend the PIP meeting. Although he was not represented a by a labor union, Sultan believed that he was entitled to have a co-worker attend the meeting as his representative under federal labor law. In NLRB v. J. Weingarten, Inc., 420 U.S. 251 (1975), the

Supreme Court recognized that an employee has a right under Section 7 of the National Labor

Relations Act (29 U.S.C. § 157) to the presence of a union representative at an interview which

he reasonably believes will result in his discipline.  In <u>Epilepsy Foundation of Northeast Ohio</u>,

331 NLRB 676 (2000), the National Labor Relations Board had extended that right to non-

unionized employees.

  21.  Jackson believed that Sultan's request was not appropriate because the PIP

process is intended to be a private process between the employee and his managers.  He also

believed that allowing a co-worker to participate would set a bad precedent for the future.

Jackson consulted with Audrey Saus ("Saus") in human resources, who concurred with his

opinion.  Saus offered to participate in the meeting via conference call.

  22.  On April 25, 2001, Conte told Sultan that it would not be appropriate for Hasek to

attend the meeting but told him that, if he wanted, human resources would participate.  Sultan

said he would think about it.

  23.  On April 26, 2001, Conte reminded Sultan of the PIP meeting later that day.

Conte again stated that, if Sultan wanted, human resources could participate in the meeting.

  24.  That afternoon, Sultan, Conte and Jackson met in a conference room for the PIP

meeting.  Although Conte had told Sultan that Hasek would not be allowed to participate, Hasek

also arrived at the meeting.  Sultan again asked whether Hasek could sit in on the meeting, and

Jackson denied that request.  In response, Sultan refused to participate in the meeting without

Hasek.  He said that they would have to reschedule the meeting because he and Jackson were at a

"Mexican standoff" over his request for a representative.  Because Sultan refused to attend

without Hasek as his representative, the meeting was cancelled.

  25.  On May 1, 2001, Conte and Jackson asked to talk to Sultan in a conference room.

At the outset of the meeting, Jackson handed a memorandum to Sultan.  The memo stated as

follows:

> James,
>
> After our discussion on Thursday about the PIP session, I wanted to make sure
> that there was no misunderstanding of the purpose of the Performance
> Improvement Plan (PIP).  The PIP is Verizon's process for providing a
> framework for employee improvement where it is deemed necessary based upon
> the appraisal process.
>
> The discussions about your performance are something that Verizon considers to
> be between you and your management team, and therefore it would not be
> appropriate for you to have other individuals to be present at such discussion as
> "representation".  Your manager team is there at those meetings to provide you
> the coaching and direction which will allow you to have the opportunity to bring
> your performance to a satisfactory level.  We cannot permit other individuals,
> outside of the designated management team, to participate or be present at
> performance discussions.
>
> Participation in the Verizon PIP process is a condition of your continued
> employment.  Your participation is critical to give you the opportunity to bring
> your performance to a fully satisfactory level.  If you choose not to participate in
> the Verizon PIP process, your employment will be separated.

This was the third time that they had communicated to Sultan that they would not abide by his

request to have Hasek attend the meeting.

     26.     Jackson gave Sultan the opportunity to read the memorandum, and, after doing so,

Sultan said that he understood it.  Jackson then told Sultan that they wanted to have the PIP

meeting the following day, May 2, 2001.  Sultan responded that his position had not changed and

that he would not participate unless he had the representative of his choosing at the meeting.

Jackson suggested that Sultan think about his position, and Sultan again said that he would not

participate without the presence of a co-worker of his choosing.

     27.     Jackson then suggested that they go over the memo together.  Jackson explained

that the PIP process is private.  Sultan disagreed, stating that the PIP process is a disciplinary

process and therefore he was entitled to a representative of his choosing. Jackson responded that Verizon did not consider the process to be disciplinary.

28.    Jackson stated that participation in the PIP is a condition of employment and that Sultan's refusal to participate would constitute insubordination and result in the separation of his employment. Jackson again offered to give Sultan a few days to think about it. Sultan said that he had rights and that he would stand up for his rights. He told Jackson that he would not participate in the meeting alone and that Jackson had his answer and that his answer was not changing. Jackson again asked Sultan if he wanted more time to think about the issue, and Sultan responded that he just needed time to pack up his things. Jackson explained that Sultan had separated his employment from VSG and, at Sultan's request, put that in writing. At the time of this meeting, Jackson was 50 years old.

29.    Merkis was not involved in Sultan's termination. He did not participate in the meeting, and Jackson did not consult him before stating that Sultan's employment was terminated. Merkis learned about the termination when Jackson copied him on an e-mail to Sultan stating that he had separated employment from VSG.

30.    After his termination, Sultan was not replaced. DTIG was in the process of reducing head count because of a decrease in work. Had Sultan not been terminated, he likely would have been terminated as part of a reduction in force a few weeks later because he was the lowest rated employee on his team. Further, there were several subsequent RIFs in DTIG, suggesting that it is unlikely that Sultan would have remained employed by VSG, even if his employment had not been terminated on May 1, 2001.

31.    On May 2, 2001, Sultan discussed his termination with his attorney Kevin Powers.

32.     On May 2, 2001, Sultan filed an unfair labor practice charge against Verizon with the National Labor Relations Board, alleging that Verizon had violated the National Labor Relations Act by denying his request for a representative and then terminating him.

33.     On August 22, 2001, the Regional Director of Region 1 of the National Labor Relations Board notified Sultan that it was unwilling to issue a complaint on his allegations.

34.     On October 31, 2001, Sultan filed a charge of discrimination against Verizon with the Massachusetts Commission Against Discrimination ("MCAD") alleging that Verizon had discriminated against him, *inter alia*, on the basis of age.

35.     On April 16, 2004, the MCAD notified Sultan that it was dismissing his charge of discrimination for lack of probable cause.  On April 18, 2004, Sultan appealed that determination.  As grounds for his appeal, Sultan argued that the MCAD had refused to consider an amendment to his charge that Verizon unlawfully terminated him for exercising his *Weingarten* rights.

36.     On April 30, 2004, Sultan brought suit against Verizon, alleging both age discrimination and a violation of the National Labor Relations Act.

37.     On or about December 23, 2005, the Court granted in part Sultan's motion to amend the complaint to assert only a claim of age discrimination, pursuant to Massachusetts General Laws ch. 151B.  However, the Court held that any claim of age discrimination based upon events that predated Sultan's May 1, 2001 termination were barred by the applicable three-year statute of limitations.

38.     On February 5, 2007, the Court granted Sultan's oral motion to amend the complaint again in order to substitute VSG for Verizon Communications.

VII.    Proposed Conclusions Of Law.

A.    VSG's Affirmative Defense of NLRA Preemption.

1.    The National Labor Relations Board has exclusive jurisdiction under the National

Labor Relations Act to hear claims of unfair labor practices.  See 29 U.S.C. § 160.  The Supreme

Court has held that "[w]hen an activity is arguably subject to § 7 or § 8 of the National Labor

Relations Act . . . the States as well as the federal courts must defer to the exclusive competence

of the National Labor Relations Board." San Diego Bldg. Trades Council v. Garmon, 359 U.S.

236, 245 (1959); see also Tamburello v. Comm-Tract Corp., 67 F.3d 973, 976 (1st Cir. 1995)

(explaining that the Board has primary and exclusive jurisdiction over claims of unfair labor

practices).  In Chaulk Services, Inc. v. MCAD, 70 F.3d 1361, 1366-67 (1st Cir. 1995), the Court

of Appeals for the First Circuit held that, under Garmon, an employee's claim of discrimination

is preempted by the Act if it is founded on the identical facts which provide the basis for an

unfair labor practice charge.

2.    Sultan's claim of age discrimination and his earlier charge of unfair labor

practices are based on the same facts -- his termination on May 1, 2001 after he refused to

participate in the PIP meeting without the presence of a Weingarten representative.  Therefore,

under Chaulk, his state law claim for age discrimination is preempted by the National Labor

Relations Act.

3.    The fact that the Regional Director of the Board refused to issue a complaint on

Sultan's charge of unfair labor practices does not save his claim of age discrimination from

preemption, because the Regional Director's refusal to act was not a finding that Sultan's

allegations were neither prohibited nor protected by the Act.  See Garmon, 359 U.S. at 245-46;

see also Local 926, International Union of Operating Engineers v. Jones, 460 U.S. 669, 680

(1983).

B.    The Merits of Sultan's Claim of Age Discrimination under M.G.L. ch. 151B.

4.    Even if the claim is not permitted, Sultan has failed to prove by the preponderance of the credible evidence a violation of Massachusetts General Laws Ch. 151B. Massachusetts General Laws ch. 151B, § 4 states that it is an unlawful practice "[f]or an employer in the private sector, by himself or his agent, because of the age of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual . . ." "Age" is defined under the statute as "greater than 40 years" of age. M.G.L. ch. 151B, § 1. Regardless of whether this case is characterized as one involving direct or indirect evidence, to establish a claim under age discrimination, Sultan must prove the following four elements: "membership in a protected class, harm, discriminatory animus, and causation." See Sullivan v. Liberty Mutual Insurance Co., 825 N.E.2d 522, 530, 444 Mass. 34 (2005).

5.    This case does not involve direct evidence of age discrimination. As set forth above, Sultan's testimony that Merkis made certain age-related comments should not be credited. Regardless, the testimony, even if credited, would not warrant treating this case as one involving direct evidence, because Sultan has failed to prove any causal connection between Merkis's alleged statements and his termination nine months later involving Conte and Jackson. See Wynn & Wynn, P.C. v. MCAD, 729 N.E.2d 1068, 1078 (2000); Mole v. Univ. of Mass., 814 N.E.2d 329, 343, 442 Mass. 582 (2004).

6.    In a case involving indirect or circumstantial evidence, the familiar three-stage burden shifting paradigm is applied. Sullivan, 825 N.E.2d at 39. First, Sultan must establish a prima facie case of discrimination: that (1) he was over the age of 40 at the time of his termination; (2) he performed his job at an acceptable level; (3) he was terminated and (4) he was termination under circumstances giving rise to an inference of age discrimination. See id. at

531, 444 Mass. 34, 41 (2005); Knight v. Avon Products, 780 N.E.2d 1255, 1258, 438 Mass. 413, 414 (2003).

7.      Sultan has not established a prima facie case of discrimination.  It is undisputed that Sultan was over the age of 40 at the time of his termination.  However, he has failed to prove that VSG terminated him, as he chose to separate his employment rather than participate in the PIP process.  He also was not performing his job at an acceptable level.  Finally, Sultan can point to nothing to suggest his termination was due to age discrimination.  He was not replaced by a substantially younger worker, and the individual most involved in the termination, Jackson, is nearly the same age as Sultan himself.

8.      At the second stage, VSG must articulate a legitimate, non-discriminatory reason for its action.  Abramian v. President & Fellows of Harvard College, 731 N.E. 2d 1075, 1084, 432 Mass. 107, 117 (2000).  VSG has met its burden of production by presenting evidence that Sultan's employment was terminated because he refused to participate in the PIP meeting without the presence of a co-worker.

9.      At the third stage, Sultan must demonstrate that VSG's proffered reason is pretext for unlawful discrimination.  See id. at 1085 ("At the third stage the employee must show that the basis of the employer's decision was unlawful discrimination"); Knight, 780 N.E.2d at 1262.  Sultan has not met his burden in this regard.  As set forth above, Sultan was told at least three times that VSG would not grant his request for a co-worker to attend the PIP meeting.  Despite this repeated directive, Sultan continued to refuse to participate in the meeting without a co-worker.  Jackson warned him that his conduct amounted to insubordination and repeatedly gave Sultan time to think about his position.  Sultan refused to do so, choosing instead to separate his employment.  As these fact make clear, there was nothing false about VSG's reason for the

termination, let alone pretext for unlawful age discrimination.

10.    Sultan apparently understood that his refusal to participate in the PIP without a *Weingarten* representative was the reason for his termination because his first action was to file a charge of unfair labor practices with the Board.  It was only after the Board refused to proceed on his charge, that he sought to assert a claim of age discrimination.

11.    While Sultan points to instances where other employees were not terminated for different acts of misconduct, those other employees were not similarly situated with Sultan, and thus those incidents are insufficient to establish that VSG's actions were pretext for unlawful discrimination.  See Matthews v. Ocean Spray, Cranberries, Inc., 686 N.E.2d 1303, 1310-11, 426 Mass. 122 (1997).

12.    Taken together, Sultan has not proved by a preponderance of the credible evidence that VSG harbored discriminatory age animus towards him and that he was terminated because of that animus.

VERIZON SERVICES GROUP

By its attorneys,


 s/ Robert A. Fisher
Arthur G. Telegen, BBO #494140
Robert A. Fisher, BBO #643797
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA  02210
(617) 832-1000

Dated:  May 22, 2007

<u>CERTIFICATE OF SERVICE</u>

I, Robert A. Fisher, certify that on May 22, 2007, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to plaintiff by electronically serving his counsel of record.

<u>s/ Robert A. Fisher</u>